**Oreathal ALFORD, Administratrix of the Estate of Ezell Alford**

v.

**Hugh MAJOR d/b/a Hugh Major Truck Lines and Carriers, Inc.**

**Civ. No. 4967.**

United States District Court,
N. D. Indiana,
Hammond Division.

July 6, 1970.

Max Cohen, Cohen, Delph & McKenna, Gary, Ind., for plaintiff.

Edmond J. Leeney, Galvin, Galvin & Leeney, Hammond, Ind., for defendant Hugh Major.

William S. Spangler, John McQuillan, Spangler, Jennings, Spangler & Dougherty, Gary, Ind., Peter C. Bomberger, Friedrich, Bomberger, Tweedle & O'Connor, Hammond, Ind., for defendant Carriers, Inc.

This is a wrongful death action, arising out of a collision that occurred at an intersection in Gary, Indiana. The facts relevant to the motions now before the Court are established by stipulation. On December 22, 1967, Ezell Alford was struck and killed by a tractor-trailer unit operated by Gary L. Forrer. Forrer was arrested, charged with running a red light, pleaded guilty, and was fined.

The truck he was driving belonged to Marvin Schoaff. At the time of the ac-

cident, it was under a one-year lease to Carriers, Inc. Under the terms of that lease, Schoaff supplied tractor, trailer and driver, in return for 75% of the truck's gross revenues. Out of that sum, Schoaff paid all maintenance and operating expenses, including the driver's salary.

The day before the accident, Carriers had sub-leased the truck, along with its driver, to Hugh Major, for a single trip from Hammond, Indiana, to Cozad, Nebraska, under Major's I.C.C. operating permit. The terms of the trip lease were similar to those of the lease with Schoaff. The parties have stipulated that at the time of the accident Forrer was on his way to Hammond for the sole purpose of picking up Major's cargo.

The complaint alleged that Major and Carriers were engaged in a joint venture at the time of the accident, and that Forrer was acting as the servant of both. Major filed two cross-claims against Carriers, both based on the indemnity provisions of the trip lease. Both parties have moved for summary judgment on the cross-claims.

The critical provision reads as follows:

> Lessor agrees to indemnify and hold Lessee harmless from any damages, loss or expenses to carge [sic] transported on leased equipment resulting from negligence of Lessor or his driver; or from and against claims demands judgments, loss, damages and expenses arising from death or bodily injuries to third persons or to property of third persons resulting from negligent operation of leased equipment by lessor or his driver; or against claims, demands, loss or action brought or asserted against Lessee by reason of any workmen's compensation law or employers liability law arising out of use or operation of leased equipment under this lease.

Carriers contends, first, that the clause is inapplicable to the facts of this case;

and second, that if it does apply, it should be declared void as contrary to public policy.

■ The first argument is based on Carriers' interpretation of the phrase "Lessor or his driver." Carriers argues that the driver was "Lessor's" only at times when he was not acting as the servant of the lessee. As an example, it cites a case where "the trip lease had just ended, Hugh Major was not actually operating the unit, and nevertheless a claim was filed against Hugh Major by an injured party." But that interpretation makes no sense in view of the indemnity clause as a whole. The clause covers damage to the lessee's cargo, as well as injuries suffered by third parties. If a driver was "Lessor's" only at times when the truck was not being operated for the lessee's benefit, damage to the lessee's cargo through the negligence of "Lessor's driver" would have been an extremely remote possibility. Moreover, in a lease as short and to the point as this one, it seems highly unlikely that the parties would have taken the trouble to draft an indemnity provision whose only function was to protect the lessee from the relatively minor inconvenience of being sued by mistake.

■ Carriers' next line of defense is the argument that under the facts of this case Forrer was a "borrowed servant." Its assumption is that even if a joint servant can be "Lessor's driver," a borrowed servant cannot. However, the borrowed servant doctrine is a tort concept, and the question here is one of contract. Without deciding the factual issue, it is sufficient to observe that even if Forrer was a borrowed servant for tort purposes, he could still have been "Lessor's driver" within the meaning of the indemnity agreement.

■ Finally, Carriers emphasizes the fact that it made no profit out of the trip lease to Major.[1] Carriers argues

---

1. In his deposition, Marvin Schoaff, Carriers' own lessor, testified that any rentals received from Major were to have been passed on to him, and that the trip

that it would be unreasonable to characterize Forrer as "Lessor's driver" when Carriers neither paid his salary nor profited from his services.

But whatever the arrangement between Carriers and Schoaff may have been, the trip lease between Carriers and Major expressly provided that "Lessor shall pay driver's salary, maintain workmen's compensation coverage, and pay all taxes * * * based on payroll." Forrer customarily worked for Carriers, driving the same truck he was driving at the time of the accident. Moreover, it was Forrer that signed the lease, in a space reserved for the lessor's "authorized agent." Under those circumstances, this Court is of the opinion that Forrer was "Lessor's driver" for the purposes of the indemnity agreement.

■■■ The only remaining question is whether or not the agreement is valid. Carriers relies on the common law rule that:

> A bargain for exemption from liability for * * * the consequences of negligence is illegal if * * * one of the parties is charged with a duty of public service, and the bargain related to negligence in the performance of any part of its duty to the public, for which it has received or been promised compensation. Restatement of Contracts § 575 (1932).

Carriers' position is that Major, as an interstate freight carrier licensed by the Interstate Commerce Commission, was "charged with a duty of public service" within the meaning of the Restatement, and that as a result, any attempt to secure indemnification for the consequences of negligent operation would be void as contrary to public policy.

In his brief, Major concedes that if one of his own employees was operating the truck at the time of the accident, the Restatement rule would apply, and the indemnity agreement would be void. However, he contends that that rule has

no application in a situation like this, where "the actual care, custody and control of the truck remained with the lessor even though the lessee legally assumed full responsibility therefor to the general public." Reply Brief, p. 10. In support of that contention, he cites Newsome v. Surratt, 237 N.C. 297, 74 S.E.2d 732 (1953), which appears to be the only reported case dealing with this precise question. There, on facts practically identical to those now at bar, the North Carolina Supreme Court permitted indemnification, holding that:

> * * * the liability of the franchise carrier was secondary, and in the absence of some countervailing equity, the carrier is entitled to recover over against the owner of the leased truck.

> In the instant case, the owner's regular driver was in charge of the * * * truck, and in reality of course the only thing that the franchise carrier did was tell him where to go and what to bring or carry. And the duty imposed by law with respect to third parties in no way interfered with the right of the lessor to agree to indemnify the lessee for any loss it might sustain as a result of the negligence, incompetence or dishonesty of any driver which the lessor might furnish to operate the leased truck.

However, with all due respect, this Court finds itself unable to agree with that decision. It is true that as a general rule a party whose liability results solely from the existence of a nondelegable duty is entitled to indemnification, even in the absence of contract, from the person whose wrongdoing was the actual cause of the injury. *See, e. g.*, McClish v. Niagara Machine & Tool Works, 266 F.Supp. 987, 990 (S.D.Ind.1967). However, that rule should apply only in cases where there is no public policy against delegation *per se*. That is not the case here. If the facts are as Major claims, and Major permitted Carriers to retain

---

lease was simply a "convenience thing," to keep the truck on the road and gener-

ating revenues for Schoaff when it would otherwise have been idle.

complete control over the truck and its driver, Major was violating both the letter and the spirit of the Interstate Commerce Act, and he cannot now escape liability by relying on that violation.

49 U.S.C. § 304(e) authorized the Interstate Commerce Commission to make:

> such other regulations as may be reasonably necessary in order to assure that while motor vehicles are being [leased] the motor carriers [lessees] will have full direction and control of such vehicles and will be fully responsible for the operation thereof in accordance with applicable laws and regulations, as if they were the owners of such vehicles, including the requirements prescribed by or under the provisions of this chapter with respect to safety of operation and equipment.
> \* \* \*

The Commission responded by enacting 49 C.F.R. 1057.4(a) (4), which requires that every agreement leasing a truck to an interstate carrier

> shall provide for the exclusive possession, control, and use of the equipment, and for the complete assumption of responsibility in respect thereto, by the lessee for the duration of said contract, lease or other arrangement.

Major contends that the sole purpose of the statute was to eliminate the independent contractor defense in cases involving licensed carriers, thus providing injured members of the public with defendants subject to the I.C.C.'s minimum insurance requirements. But if that was the only purpose, it could have been achieved merely by providing that carriers were henceforth to be legally responsible for the operation of leased equipment. Congress did more: it authorized regulations to ensure that carriers "will have full direction and control of such vehicles \* \* \*, as if they were the owners. \* \* \* " And the regulation was drafted accordingly.

In the opinion of this Court, the main purpose of the statute was to ensure that all interstate operations would be supervised directly by persons familiar with federal safety regulations and amenable to the jurisdiction of the Interstate Commerce Commission. In other words, the intent was to make sure that licensed carriers would be responsible in fact, as well as in law, for the maintenance of leased equipment and the supervision of borrowed drivers. The Interstate Commerce Act was supposed to prevent accidents, as well as to provide financially responsible defendants in the event of their occurrence. And that end could best be achieved if the carriers themselves exerted actual control over leased equipment.

The situation here is strikingly similar to the one in Carriers Insurance Exchange v. Truck Insurance Exchange, 310 F.2d 653 (4th Cir. 1962). There, where the carrier also pleaded that his lessor had actual control, the court characterized the issue as:

> whether there may be contribution among joint tortfeasors who deliberately ignore statutory provisions enacted for the safety of the public and engage in an enterprise in the course of which injuries are inflicted on third parties by the negligence of one of the participants.

The court answered in the negative, holding that "neither wrongdoer is entitled to recover from the other in this situation." The same rationale applies here. Major will not be permitted to escape liability by pleading that his compliance with the regulations of the Interstate Commerce Commission was a mere formality, and that control was in fact exercised by Carriers. The Court therefore holds that the indemnity agreement in the lease between Major and Carriers is void as contrary to public policy.