465 F.2d 710
 ALLSTATE INSURANCE COMPANY, Plaintiff-Appellee,
v.
ALTERMAN TRANSPORT LINES, INC., Defendant-Appellee-Cross-Appellant,
v.
CONSOLIDATED SYSTEMS, INC., Defendant-Appellant-Cross-Appellee.
ALLSTATE INSURANCE COMPANY, Plaintiff-Appellee-Cross-Appellant,
v.
ALTERMAN TRANSPORT LINES, INC., Defendant-Appellee-Cross-Appellant,
v.
CONSOLIDATED SYSTEMS, INC., Defendant-Appellant-Cross-Appellee.
 Nos. 31139, 71-2103.
 United States Court of Appeals,
 Fifth Circuit.
 Aug. 30, 1972.
Rehearing Denied Oct. 2, 1972.
 
 Bernard C. Pestcoe, George D. Gold, Miami, Fla., for Consolidated Systems, Inc.
 L. Norton Preddy, Burt E. Redlus, Miami, Fla., for Alterman Transport Lines.
 Don R. Livingstone, David L. Willing, Miami, Fla., for Allstate Ins. Co.
 Before RIVES, BELL and MORGAN, Circuit Judges.
 LEWIS R. MORGAN, Circuit Judge:
 
 
 1
 The question presented in this suit for indemnification is which of three parties must ultimately bear the loss for monies paid out in settlement of a tort claim. The district court held that an insurance policy issued by Allstate Insurance Company did not afford coverage for the injury; that Alterman Transport Lines, Inc., was primarily liable for payment of the tort claim; but that Alterman was entitled to be reimbursed by Consolidated Systems, Inc., due to an indemnification agreement between the two corporations. After considering the various assignments of error, we affirm the final judgment[1] of the district court.
 
 
 2
 The event which gave rise to this litigation occurred in 1964 on a Florida highway when a tractor-trailer unit driven by Elmer Stewart crashed into the rear of an automobile driven by John Maguire. The tractor-trailer unit was on lease to Alterman from Consolidated for the duration of a single trip from Chicago, Illinois, to Miami, Florida.[2] Contained in the lease was a provision by which Consolidated agreed to indemnify Alterman for any damage done to or suffered by the driver or other persons in connection with the operation of the tractor-trailer unit during the term of the lease. The lease also provided that Consolidated was to be responsible for servicing the vehicle and keeping it in good repair. Consolidated's insurance carrier was Allstate.
 
 
 3
 After the collision Maguire filed suit for personal injuries in a Florida state court against Consolidated, Alterman, and Elmer Stewart. The state court suit was finally settled for $16,000.00 with Allstate and Alterman each paying half.
 
 
 4
 Allstate then filed suit in federal district court for a declaratory judgment of liability as between itself, Consolidated, Alterman, and Alterman's alleged insurance carrier, Citizens Casualty Company. The district judge granted summary judgment against Citizens and in favor of Allstate, but on appeal this court reversed and held that Citizens did not afford insurance coverage for the Maguire accident. Consolidated Systems, Inc. v. Allstate Insurance Company, 5 Cir. 1969, 411 F.2d 157. This court then remanded the case so that a complete factual record might be developed concerning the liabilities of the three remaining parties-Alterman, Allstate and Consolidated.
 
 
 5
 On remand the district court entered findings of fact and conclusions of law, and held that Allstate was entitled to indemnification from Alterman; and that Alterman, in turn, was entitled to indemnification from Consolidated. The district court reached this result by first concluding that Alterman, by virtue of its complete control over the tractor-trailer unit and the driver, was the active tort-feasor and primarily liable for payment of Maguire's personal injury claim. The court next held that Allstate's insurance policy did not cover the damage done to Maguire, and thus, Allstate could collect the amount it paid ($8,000.00) in settlement of the tort claim, plus attorneys' fees expended in the state court action from the primary tort-feasor, Alterman. Allstate was not awarded recovery of attorneys' fees for prosecution of the federal suit. However, since Alterman and Consolidated had signed the indemnification agreement, which the court upheld as valid, Alterman was allowed to recover from Consolidated all sums paid to Allstate, plus the sums advanced in defending and settling the tort claim with Maguire, and the expenses incurred in prosecuting the federal suit for indemnification. The net effect of the district court's judgment was that Consolidated was liable, either directly or indirectly, for all sums expended by Allstate and Alterman in settling the tort claim at the state court level, plus the monies expended by Alterman in prosecuting the federal indemnity action.
 
 
 6
 On this appeal all three parties attack the district court's holding by raising various interdependent issues which we deal with in sequential order.
 
 Validity of the Indemnification Agreement
 
 7
 In the indemnification clause of the Consolidated-Alterman lease, Consolidated agreed to "be responsible for any loss, personal injury, death and/or damage that may be done to or suffered by drivers or other persons in connection with the operations to be carried out pursuant to this agreement" and to "indemnify and save harmless [Alterman] against claim for any such loss". The lease further provided that Consolidated was to maintain and service the tractortrailer unit and keep it in good repair during the hauling operation. Consolidated contends that the entire lease is invalid as against public policy because both of these clauses violate the Interstate Commerce Commission regulation which states that any contract for the use of leased trucking equipment "shall provide for the exclusive possession, control and use of the equipment, and for the complete assumption of responsibility in respect thereto". Title 49, C.F.R., Sec. 1057.4(a) (4).
 
 
 8
 As to the clause requiring Consolidated to maintain and service the tractortrailer unit, Consolidated claims that the responsibility for vehicular maintenance was illegally shifted by Alterman to its lessor, contrary to the letter and spirit of the I.C.C. regulations. The purpose of the regulations, according to Consolidated, was to protect the public from unsafe vehicles by requiring each trucking company to be responsible for the mechanical condition of all the equipment it put on the highway. We need not decide the merits of this contention,[3] however, because the record in this case does not support Consolidated's initial assumption, i. e., that Alterman avoided responsibility for maintenance of the vehicle. Although not mentioned in either of the briefs, the lease specifically provided that "said vehicle shall be solely and exclusively under the direction and control of the lessee [Alterman] who shall assume full common carrier responsibility . . . . for the operation of such vehicle." (Emphasis supplied). Furthermore, prior to the Chicago-Miami trip, Alterman had the tractor-trailer unit inspected for mechanical defects. This fact is evidenced by an inspection sheet in the record listing some 19 different items which were inspected and found to be in good working order by a qualified mechanic.[4] The inspection sheet was signed by a responsible Alterman employee who certified that the person inspecting the vehicle was qualified to make such an inspection and authorized to do so as a representative of Alterman. Thus, contrary to the assertion of Consolidated, Alterman was at all times responsible for the quality of the maintenance performed on the leased vehicle even though Alterman employees were not themselves bound to repair the vehicle. That responsibility was not evaded by requiring Consolidated to perform the actual mechanical work, any more than it would have been an evasion for Alterman to contract for vehicular maintenance with a private garageman, because Alterman continued to bear responsibility for the vehicle's mechanical condition.
 
 
 9
 Turning to the indemnification clause itself we find nothing in the language of 49 C.F.R. Sec. 1057.4(a) (4) which would prohibit two freely contracting parties from determining, as between themselves, which party will ultimately bear the cost of damages done to a third person. The only conceivable argument against such an arrangement would be that the regulation seeks to prevent indemnification on the theory that a trucking company, knowing it does not have to pay damages, might tend to be less careful in supervising and controlling the actions of its truck drivers. However, the same can be said of insurance coverage which the regulations obviously do not prohibit. We are of the opinion that had the I.C.C. intended to prevent indemnification between trucking companies it would have said so in precise terms.
 
 
 10
 Although Consolidated cites Carriers Insurance Exchange v. Truck Insurance Exchange, 4 Cir. 1962, 310 F.2d 653, and Alford v. Major (N.D.Ind., 1970) 314 F.Supp. 979, as authority for invalidating the indemnification agreement, we find those cases inapplicable to the facts here involved. In Carriers the indemnification clause was struck down because the two contracting trucking companies violated an I.C.C. safety regulation[5] and created a dangerous condition which resulted in injury to an innocent third party. In Alford there was a prima facie violation of 49 C.F.R. Sec. 1057.4(a) (4) because the lessee allowed the lessor to retain full control over the truck and the driver during the term of the lease. As we have previously held in this opinion, Alterman's arrangement with Consolidated did not abrogate pertinent I.C.C. regulations. The absence of any regulatory violation on the part of Alterman removes this indemnification clause from the public policy considerations which were present in Carriers and Alford.
 
 
 11
 Finally, we find no merit in Consolidated's contention that the plain language of the indemnification clause[6] excludes third-party injuries and applies only to injuries suffered by the truck driver or other individuals engaged in the leasing operation.
 
 Actual Liability of Elmer Stewart
 
 12
 Although Consolidated signed an agreement allowing Allstate and Alterman to settle the Maguire lawsuit, the agreement specifically provided that any such settlement would not affect the rights of the parties in the federal suit for indemnity. Consolidated contends that it is not bound to indemnify Alterman because, assuming the validity of the indemnification agreement, no proof was ever offered that the driver of the truck, Elmer Stewart, was negligent and legally responsible for the collision which injured Maguire. However, in a finding of fact, which is not disputed on this appeal, the district court found that the tractor-trailer unit struck Maguire's automobile from the rear while both vehicles were traveling in the same direction. Under Florida law a rear-end collision raises a presumption of negligence on the part of the overtaking vehicle. Busbee v. Quarrier, Fla.App.1965, 172 So.2d 17. A review of the record reveals that Consolidated at no time requested the district court to take evidence on the question of the actual liability of Elmer Stewart, and Consolidated does not now argue before this court that it has affidavits, or any other possible source of evidence, which would tend to rebut this presumption of negligence which is raised by an undisputed fact. Thus, assuming without deciding, that proof of actual liability is required in this case, Consolidated has failed to create any issue of fact as to the negligence of the truck driver under Florida law.
 
 
 13
 Whether Allstate Provided Insurance Coverage for the Maguire
 
 Accident
 
 14
 In holding that Allstate's insurance policy did not extend coverage to the damages suffered by Maguire, the district court first concluded that, under the literal terms of the policy, Alterman was not afforded coverage for the Maguire accident. This conclusion is not contested by Alterman or Consolidated on appeal. Secondly, the court held that Alterman was the active tort-feasor and primarily liable for the injuries to Maguire due to the fact Alterman had possession of the tractor-trailer unit and control over the driver at the time the collision occurred. Alterman's argument on this point boils down to an assertion that the district court erred, as a matter of law, in holding that Alterman controlled and directed the truck driver during the term of the lease. It is readily apparent, however, that the district court's holding was based upon numerous undisputed facts which overwhelmingly support the conclusion under Florida law that the truck driver was under Alterman's control. See Martin v. Lloyd Motor Company, Fla.App.1960, 119 So.2d 413; Mercury Cab Owner's Association v. Jones, Fla.1955, 79 So.2d 782; Wilson v. Burke, Fla.1951, 53 So.2d 319. In its findings of fact the district court discussed in detail the relationship that existed between Elmer Stewart and Alterman and Consolidated:
 
 
 15
 "Stewart at all times material to this action was not an employee of Consolidated. Stewart did not receive wages or a salary from Consolidated; he received as rent, a percentage of the net revenue generated by the leased equipment. Consolidated did not withhold money from Stewart's rental income for income tax or social security. Consolidated did not pay on behalf of Stewart, any monies to the Federal Government as employer's contributing share of an employee's social security payment. The President of Consolidated, John J. Jerue, testified that Stewart was not considered an employee. Consolidated considered Stewart to be self-employed or an independent contractor. . . . During the term of the single trip lease, the motor vehicle equipment was operated under Alterman's permit and authority, and over routes which Alterman was authorized to serve. Alterman placards were installed on the exterior of the vehicle for the trip. Consolidated was not authorized by any public authority to transport non-exempt commodities in or into Florida. . . . Alterman had the right to accept or refuse Stewart as the driver of the leased equipment. Alterman accepted Stewart and provided him with detailed information and instructions as to Alterman's permits in the various states, telephone numbers of Alterman's terminals, names of Alterman people to be contacted at each terminal, and directions to check-call the Alterman terminal in Miami on a daily basis during the course of the transportation being performed under the trip-lease."
 
 
 16
 None of these findings is contested by Alterman. Moreover, all the facts which Alterman cites as contra to the court's conclusion concern various acts by Stewart which occurred before the lease came into existence and not at a time when Stewart was allegedly operating for Alterman.
 
 
 17
 The district court's holding that Allstate was not liable for Maguire's damages is without error.
 
 
 18
 Allstate's Right to Indemnification from Alterman
 
 
 19
 There has been some question on this appeal as to the theory under which the district court allowed Allstate to recover from Alterman. Both Consolidated and Alterman contend that in order to recover Allstate must have a contractual relationship with the indemnitor, or alternatively, Allstate must subrogate its claim to Consolidated, in which case Allstate would be barred from recovery by the Consolidated-Alterman indemnity agreement. We reject this contention. Under Florida law Allstate is entitled to indemnification because it paid damages in good faith on account of the negligent and tortious act of another (Alterman) and a contractual relationship with Alterman is not required. See Mims Crane Service, Inc. v. Insley Mfg. Corp., Fla.App.1969, 226 So.2d 836; Olin's Rent-A-Car Sys. v. Royal Continental Hotels, Fla.App.1966, 187 So.2d 349. The district court properly held that Alterman must indemnify Allstate for monies paid out in settlement of the tort claim.
 
 
 20
 The District Court's Holding that Consolidated Breached its
 
 Subrogation Agreement with Allstate
 
 21
 We turn now to a point in the district court's opinion which has been the source of considerable confusion to the parties in this litigation. As its final conclusion of law, the district court held that:
 
 
 22
 "The indemnification agreement contained in the Consolidated-Alterman motor vehicle lease and agreement of February 6, 1964, effectively breached the subrogation clause of Allstate's policy[7] issued to Consolidated, resulting in a forfeiture of coverage for the Maguire accident and a liability for damages consequent upon the breach by Consolidated."
 
 
 23
 In its briefs Consolidated argues at length that the Consolidated-Allstate subrogation clause was not breached by the Consolidated-Alterman indemnity clause, and that the district court's holding on this issue is inconsistent with the court's prior holding that Allstate was entitled to indemnification from Alterman. On the other hand, Allstate argues in support of the district court's holding.
 
 
 24
 We are of the opinion, however, that it was unnecessary for the court to rule on whatever effect the indemnity agreement may or may not have had on Allstate's right of subrogation via Consolidated. Once the court held (1) that Alterman was primarily liable for the tort claim of Maguire and (2) that Allstate's insurance policy did not cover Alterman, there was no need to rule further in regard to Allstate. At that point Allstate was entitled to recover the sums it expended in settling the Maguire lawsuit from Alterman and the case was ended as far as Allstate was concerned.
 
 
 25
 The foregoing analysis is supported by the final judgment entered by the district court on September 30, 1970. Allstate was awarded judgment against Alterman, and in a separate part of the final judgment, Alterman was granted recovery against Consolidated. No mention is made of any recovery by Allstate against Consolidated, despite statements to the contrary in the court's opinion and initial judgment entered on September 3, 1970. We hold that the district court's final judgment correctly reflects the respective liabilities of the three parties and that Consolidated was not directly liable to Allstate.
 
 
 26
 Denial of Allstate's Recovery of Attorneys' Fees in the
 
 Federal Indemnity Suit
 
 27
 Although the district court allowed Allstate to recover from Alterman attorneys' fees expended in settling the Maguire lawsuit, the court denied Allstate recovery of its expenses incurred in prosecuting this action for indemnification. The general rule in Florida is that attorneys' fees are not recoverable in the absence of an express contract or a statutory provision, e. g., Ginsberg v. Ginsberg, Fla.App.1961, 128 So.2d 435. The cases[8] cited by Allstate are not authority for excepting this claim for attorneys' fees from the general rule in Florida. Allstate's contention that the district court erred in denying the attorneys' fees is without merit.
 
 
 28
 To summarize the effect of our disposition of the several issues on this appeal, we note that Alterman, as the active tort-feasor, was primarily responsible for payment of the Maguire tort claim. Were it not for the Consolidated-Alterman indemnity contract, Alterman would bear the entire cost of the Maguire settlement and Consolidated would pay nothing. However, because of the valid indemnity contract, Consolidated must reimburse Alterman for all Alterman's losses.
 
 
 29
 The final judgment of the district court is hereby affirmed.
 
 
 
 [1]
 This judgment was entered on September 30, 1970, as opposed to the initial judgment which was entered along with the court's opinion on September 3, 1970
 
 
 [2]
 The reason for the lease was that Consolidated was not authorized under I.C.C. regulations to haul non-exempt commodities in the State of Florida. Consolidated had taken a load of exempt commodities from Florida to Illinois and the lease arrangement allowed Consolidated to return to Florida with a revenue-producing load rather than an empty truck
 
 
 [3]
 It would be hazardous to do so in any event since the Interstate Commerce Commission was not a party to this litigation and filed no briefs on the issue
 
 
 [4]
 We are not informed whether the mechanic was an employee of Alterman
 
 
 [5]
 Title 49, C.F.R. Sec. 1057.4(c)
 
 
 [6]
 The entire clause reads as follows: "[Lessor] Agrees to be responsible for any loss, personal injury, death and/or damage that may be done to or suffered by driver(s) or other persons in connection with the operations to be carried out pursuant to this agreement and shall indemnify and save harmless the Lessee against claim for any such loss, injury, death and/or damage and against any claim for compensation to any such person whatsoever. This shall apply to all cases of such loss, injury, death and/or damages, including cases of loss, injury, death and/or damages, for which either or both parties hereto may or shall be liable."
 
 
 [7]
 The subrogation clause stated as follows: "Subrogation. In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights."
 
 
 [8]
 Morse Auto Rentals, Inc. v. Dunes Enterprises, Inc., Fla.App.1967, 198 So.2d 652; Thomas Awning and Tent Co. v. Toby's Twelfth Cafeteria, Fla.App.1967, 204 So.2d 756; Fincher Motor Sales, Inc. v. Lakin, Fla.App.1963, 156 So.2d 672; Fontainebleau Hotel Corporation v. Postol, Fla.App.1962, 142 So.2d 299; Hertz Corporation v. Ralph M. Parsons Company (M.D.Fla.1968), 292 F.Supp. 108