## CAROLINA FREIGHT CARRIERS CORP., etc.

v.

## PITT COUNTY TRANSPORTATION CO.

Civ. A. No. 122–72.

United States District Court,
E. D. Virginia,
Richmond Division.

May 17, 1973.

Nathan H. Smith, Sands, Anderson, Marks & Clarke, Richmond, Va., for plaintiffs.

Robert E. Payne and Alexander H. Slaughter, McGuire, Woods & Battle, J. W. Morris, III, Browder, Russell, Little & Morris, Richmond, Va., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

Carolina Freight Carriers Corporation (Carolina) sues on behalf of its insurer to seek indemnity against Pitt County Transportation Co. (Pitt). This matter, brought originally in the Circuit Court of Caroline County, was removed to this Court pursuant to the removal statute, 28 U.S.C. § 1446. Because there is proper diversity between tht real plaintiff in interest (Carolina's insurer, Liberty Mutual Insurance Company, a Mass. Corp.) and Pitt, jurisdiction is properly attained by virtue of 28 U.S.C. § 1441 (a). Additionally, the central issue in this matter concerns interpretation of a federal regulation so that jurisdiction is proper as well pursuant to 28 U.S.C. § 1441(b). The parties are presently before the Court pursuant to defendants motion for judgment on the pleadings. Upon the memoranda and records before it, the Court finds this matter ripe for disposition.

The facts are not in dispute. Carolina leased a tractor-trailer truck accompanied by its driver from Pitt. During the period of the rental, the driver allegedly parked improperly on a highway wayside. The truck moved backwards and collided with one Robert Powers and his infant daughter. The infant was killed and Powers injured. Liberty, Carolina's insurer, subsequently compromised the claims of the Powers against Carolina by payment of $50,000. Carolina, on behalf of Liberty, now seeks indemnity from Pitt, the lessor. Pitt has in turn filed a third party complaint against its insurer, Old Republic Insurance Company, for indemnity. For purposes of this motion, Old Republic adopts the position taken by Pitt.

The precise issue, therefore, is whether Pitt owes a duty to indemnify Carolina. Because of an alleged conflict between the lease and federal regulations, the parties, unable to agree as to this question, have come before the Court.

Neither party disputes that the lease by its terms provides that the lessor (Pitt) shall indemnify the lessee (Carolina) for damages paid by the lessee to an injured third party. The lease reads in pertinent part as follows:

> Carolina Freight Carriers Corporation, Lessee, hereby acknowledges receipt of and leases from Pitt County

Trucking Co., Lessor, of Farmville, North Carolina for its exclusive possession, control, and use, and assumes complete responsibility in respect thereto for the duration of this Motor Vehicle Trip Lease Agreement, the following vehicular equipment to be used by said lessee beginning at 1 PM o'clock on 6/19/69 in its interstate service to transport merchandise.

. . . . . .

2. LESSEE will assume and pay all costs of public liability and property damage insurance on the vehicle while operating at the direction of the Lessee and provide insurance covering cargo being transported at the direction of the Lessee. *However, in the event any loss or damage to cargo or property damage or personal injury to any third person takes place by reason of negligence or dishonesty of the owner, its agents, servants, or employees, then the owner does hereby agree to assume and be fully responsible for any such damage and, in the event payment shall be made by the Lessee herein, Lessor does hereby agree to indemnify the Lessee and hold the Lessee harmless for any and all claims. In the event that Lessee's insurance company is required to make payment therefor, then, and in that event, the insurance company shall be subrogated to the rights of the Lessee against the Lessor herein.*

3. LESSOR agrees that the LESSEE shall withhold payment of any and all sums then or thereafter due the LESSOR to the extent of such expense and claims until the determination of such expense and valid claims which amount shall be deducted to the satisfaction thereof.

. . . . . .

5. LESSOR agrees that during the term of this lease the motor vehicle equipment described above shall be under such control of the LESSEE as required by the rules and regulation of the Interstate Commerce Commission and for the limited purpose of safety to the public and safe delivery of shipment.

. . . . . .

9. LESSOR agrees that during the term of this lease:

(a) He will be solely responsible for the payment of his own Social Security Taxes, Old Age Benefits, Unemployment Compensation Taxes, Workmen's Compensation Insurance, Federal Income Taxes, license fees, and payment of all payroll deductions and taxes for employees furnished by the LESSOR.

(b) To pay fines, costs and expenses incurred in the operation of the equipment leased herein in the performance of this lease are to be borne by and be the sole responsibility of the LESSOR.

(c) *To indemnify LESSEE against loss or liability, if any resulting from the injury or death of the driver or drivers of the vehicle above described or any helpers employed by such drivers in connection with the loading or unloading of said vehicles.*

(d) *To indemnify LESSEE against any loss or damage resulting from the negligence, incompetence or dishonesty of said drivers or helpers.*

(e) To indemnify LESSEE against any loss or damage to or destruction of the trailer or other such equipment of the LESSEE towed by the LESSOR or his employee.

(f) To indemnify the LESSEE against any loss resulting from claims brought against the LESSEE for any property damage and bodily injury sustained by the public while the tractor is detached from a trailer.

. . . . . .

11. The LESSOR shall perform this contract in a safe, competent and workmanlike manner and shall be responsible to the LESSEE for complying and together with his employees, agents, and servants shall comply with all applicable requirements of federal, state and local government including but not limited to the rules and regulations of the Interstate Commerce Commission.

12. The LESSOR shall at its expense employ all necessary drivers, driver's helpers, and laborers who shall be experienced, competent, and qualified to carry out work to be performed by the LESSOR under this contract. Such employees shall also be qualified under and meet all the requirements of applicable federal and state laws and municipal ordinance and the rules and regulations of the Interstate Commerce Commission and other regulatory authorities.

. . . . . .

18. This is the entire agreement of the parties. No alteration, amendment or future understanding shall be binding unless in writing and signed by both parties. *This agreement shall be governed by the laws of the State of North Carolina.* This Motor Vehicle Equipment Lease supercedes and cancels all prior agreements and leases entered into by the parties hereto. (Emphasis supplied.)

The federal regulations governing this type of arrangement (referred to as a "trip lease") provide, to the contrary, that the lessee shall under contract be responsible for damages to third parties. They read in pertinent part: (49 CFR § 1057.4)

(a) Contract requirements. The contract, lease, or other arrangement for the use of such equipment:

(4) Exclusive possession and responsibilities. Shall provide for the exclusive possession, control, and use of the equipment, and for the complete assumption of responsibility in respect thereto, by the lessee for the duration of said contract, lease or other arrangement, [except: (i) Lessee may be considered as owner. Provision may be made therein for considering the lessee as the owner for the purpose of subleasing under these rules to other authorized carriers during such duration.]

Pitt asserts that the aforecited provisions of the lease, which render it liable for indemnity, are violative of the spirit and letter of the above-quoted ICC regulation. Carolina, relying on several decisions of North Carolina law (which govern the substantive questions of contractual law by provision of the contract), asserts that the regulation may properly be rendered inoperative by actual or contractual relationships between the parties which provide otherwise.

The first in the series of North Carolina cases relied upon, Newsome v. Surratt, 237 N.C. 297, 74 S.E.2d 732 (1953), held that the ICC policy in question would not govern where the actual relationship of the parties was such that the lessor operated the truck and the lessee did no more than to tell the lessor "where to go and what to carry." Similarly, S. & N. Freight Line, Inc. v. Bundy Truck Lines, Inc., 3 N.C.App. 1, 164 S.E.2d 89 (1968) noted that

[W]hile exclusive control, management, and use of the vehicle was vested in the plaintiff for the purpose of meeting the requirements of the Interstate Commerce Commission, actual possession or custody thereof was retained by defendant Bundy [Lessor]. It was to be operated by one of his choosing and in the selection of whom plaintiff S & N [Lessee] had no part. Immediate supervision and control as to speed, manner of operation, hours of work, and the like necessarily remained with defendant Bundy. Hill v. Freight Carriers Corp., supra.

These, we think, are the provisions of the agreement applicable and controlling here.

The Court is satisfied that this approach impliedly makes short shrift of the spirit and intent of the ICC regulation. The *Newsome* rationale has heretofore been expressly and firmly rejected by the Court of Appeals for the Seventh Circuit in Alford v. Major et al., 470 F.2d 132 (7th Cir. 1972) which is closely on point. Major leased a truck and driver from one Carriers. Plaintiff's decedent was killed when his car was struck by a truck operated by the lessee, Major. Plaintiff sued both lessee and lessor, and upon cross-claim the lessee sought to enforce an indemnification clause in its trip lease, similar to that here, against the lessor. The District Court specifically rejected the *Newsome* approach, 314 F.Supp. 979, 983 (N.D. Ind.1970), stating,

> In the opinion of this Court, the main purpose of the statute was to ensure that all interstate operations would be supervised directly by persons familiar with federal safety regulations and amenable to the jurisdiction of the Interstate Commerce Commission. In other words, the intent was to make sure that licensed carriers would be responsible in fact, as well as in law, for the maintenance of leased equipment and the supervision of borrowed drivers. The Interstate Commerce Act was supposed to prevent accidents, as well as to provide financially responsible defendants in the event of their occurrence. And that end could best be achieved if the carriers themselves exerted actual control over leased equipment.

314 F.Supp. at 983. The Court of Appeals, 470 F.2d at 135, affirmed this interpretation.

The Court has little difficulty with this problem: This is not a matter involving an irresistible force against an immovable object. The Supremacy Clause of the constitution mandates otherwise. Woolfolk v. Brown, 456 F.2d 652 (4th Cir. 1972). The ICC regulation appears mandatory on its face and under *Alford* is mandatory in application. The lease provision relied on by Carolina is clearly violative of the regulation and therefore unenforceable as void. Accordingly Pitt's motion is well taken and judgment shall be granted for defendant on the pleadings.

An appropriate order shall issue.