**INDIANA INSURANCE COMPANY, Defendant-Appellant,**

v.

**PARR TRUCKING SERVICE, INC., L & B Express, Inc., Plaintiffs-Appellees,**

**Continental Insurance Company, Defendant-Appellee.**

**No. 74–1652.**

United States Court of Appeals, Sixth Circuit.

Argued and Submitted Dec. 3, 1974.

Decided Feb. 11, 1975.

Ridley M. Sandidge, Sandidge, Holbrook & Craig, Owensboro, Ky., Kightlinger, Young, Gray & De Trude, Howard J. De Trude, Jr., Mark W. Gray, Indianapolis, Ind., for defendant-appellant.

John Wallace Beard, Clarence McCarroll, Bartlett, McCarroll & Nunley, Owensboro, Ky., for appellees.

Before LIVELY, Circuit Judge, and McALLISTER and O'SULLIVAN, Senior Circuit Judges.

LIVELY, Circuit Judge.

This diversity case involves the question of which of two insurers is required to pay for damage to cargo being hauled by truck. Indiana Insurance Company (Indiana) issued a cargo liability policy to "Parr Trucking Service, Inc. and/or L & B Express, Inc." effective July 1, 1971, continuous until cancelled. At the time the policy was issued, Parr and L & B were owned and operated by the same

person. Parr was an intrastate trucker whose hauls were confined to the State of Kentucky. L & B held an interstate certificate issued by the Interstate Commerce Commission. In compliance with ICC regulations, Indiana filed a certificate of insurance with the Commission with respect to L & B only. At the time the policy of Indiana was issued, and thereafter, Parr and L & B operated under an agreement by which certain shipments which were originated by Parr and were destined for delivery outside of Kentucky were hauled by Parr under L & B bills of lading and pursuant to L & B's interstate authority. On these hauls Parr equipment was used and Parr furnished the drivers. The revenues from such hauls were divided with Parr retaining 97½ percent and L & B receiving 2½ percent. The authorized agent of Indiana who procured the business of Parr and L & B and through whose agency the policy of July 1, 1971 was issued testified that he understood the operating arrangement between L & B and Parr at the time the policy was issued.

Parr and L & B were involved in litigation that resulted in a court order which separated the ownership of the two trucking companies, with L & B coming under the control of one William Thomas and Parr Trucking Service, Inc. remaining under the control of George W. Parr. After Thomas took over L & B, he acquired a cargo policy from Continental Insurance Company insuring L & B only. Continental, in compliance with regulations, filed a certificate of insurance with respect to L & B with the Interstate Commerce Commission. On March 2, 1972 the ICC notified Indiana that the certificate from Continental had been filed and that Indiana's certificate of cargo insurance for L & B was cancelled. Indiana did not remove L & B as an insured from its policy, and its agent assured officers of Parr and L & B that the coverage was unaffected by the ICC cancellation of Indiana's certificate of insurance.

Indiana had other policies outstanding in which Parr and L & B were both named as insured, and certificates were introduced in evidence which contained a hold-harmless agreement from Parr to L & B as endorsements to the other policies. With respect to one of the other policies issued by Indiana, its agent wrote to Parr, "Your insurer is entirely agreeable to cover the interest of L & B Express as an insured but only with respect to those operations conducted by Parr under authority granted to L & B." The agent of Indiana further testified that he knew of an agreement between Parr and L & B by which operations were conducted after ownership of the two truckers was separated, and was familiar with the hold-harmless language shown on the certificate with respect to one of the other policies issued by Indiana to Parr and L & B. He maintained, however, that he had requested and never received an executed hold-harmless agreement with respect to the cargo insurance policy.

The premium for the cargo insurance policy was based on the revenue of the insured and required monthly reporting. The agent for Indiana testified that Parr paid all of the premiums on the cargo policy and that he believed Parr reported all of its revenue for premium purposes. Though he was not certain whether the revenue produced by the shipment, the damage to which precipitated this law suit, was used in calculating the premium owed Indiana, he testified that it should have been.

Two cargoes of heavy construction equipment shipped from Brandeis Machinery Company in Louisville were damaged while being pulled by Parr under L & B bills of lading and pursuant to L & B's interstate permit on June 27 and June 29, 1972, while the Indiana policy was in effect. Parr, in reliance on the Indiana policy and its hold-harmless agreement with L & B, demanded payment from Indiana. Indiana denied coverage with respect to these claims because they arose from interstate shipments under the permit of L & B and pursuant to its bills of lading. The position of Indiana was that when Continental filed its certificate of insurance with the Interstate Commerce Commission

with respect to L & B and the certificate of insurance of Indiana was cancelled, Continental became the primary insurer and Indiana was, at most, an excess insurer. Indiana maintained that its policy covered only the legal liability of its insured as a carrier and that Parr was not the carrier of the shipment which was damaged and incurred no legal liability for loss to such shipment. Parr paid the shipper the amount of its loss, $30,895.65. Parr and L & B then sued Indiana and Continental (together with Indiana's admitted agent who was dismissed by the court) for a declaratory judgment determining which insurer was liable for the loss. This action was filed in the Daviess Circuit Court at Owensboro, Kentucky and removed to the United States District Court for the Western District of Kentucky.

After a trial before the court the District Judge entered findings of fact and conclusions of law. He found that Indiana's agent knew that Parr did not possess an interstate carrier's certificate, knew that it leased equipment to L & B and knew of the agreement requiring Parr to hold L & B harmless for damages to L & B's cargo when being pulled by Parr. The court further found that after cancellation of Indiana's L & B certificate by the Interstate Commerce Commission, Indiana's agent, knowing of the existence of the operating arrangement and hold-harmless agreement between Parr and L & B with respect to L & B's cargo, advised Parr that it was still covered. He further found that Indiana continued to accept premiums from Parr based on hauls by Parr of L & B shipments after separation of the ownership and cancellation of Indiana's ICC certificate of insurance with respect to L & B. Based on these findings, the District Judge concluded that Parr was an "insured" under the policy of Indiana, being an intrastate carrier and a named insured along with L & B on the face of the policy. It was further concluded that the cancellation of Indiana's ICC certificate did not cancel its policy or coverage and that the "other insurance" clause in Indiana's policy was no defense

in view of the fact that after it had notice of Continental's coverage it raised no issue with Parr, did not remove L & B as an insured on its policy and continued to collect premiums from Parr for shipments made pursuant to its agreement with L & B. It was finally concluded that acceptance of Parr's premium payments by Indiana with knowledge of the hold-harmless agreement obligated Indiana to pay whatever Parr's liability was under that agreement. Judgment was entered that Parr recover $30,895.65 from Indiana and that Continental's motion for summary judgment be sustained, and Continental was accordingly dismissed.

On appeal, Indiana contends that Continental became the primary insurer of L & B as a matter of law upon filing its certificate with the Interstate Commerce Commission. It maintains that Indiana was then only an excess insurer of L & B. It further contends that the cancellation of the certificate by the Interstate Commerce Commission resulted in termination of its coverage of L & B except to the extent of liability in excess of coverage of Continental. It argues also that Parr never proved a written indemnity agreement and that an oral hold-harmless agreement between two truckers is void. Finally, Indiana contends that under the terms of its policy, even though both Parr and L & B were named as insured, with respect to the shipment in which the loss occurred, Parr was not a "carrier" since it had no interstate authority and Parr had no "legal liability" to the shipper Brandeis since the cargo was being shipped under an L & B bill of lading and pursuant to its ICC authority.

Indiana has never denied that its policy remained in force or that Parr was covered as to intrastate shipments. It has denied coverage, however, as to cargo being hauled in interstate commerce under L & B bills of lading after the filing of the Continental certificate. Indiana cites a number of cases in which courts have refused to enforce indemnity agreements between motor carriers upon a finding that such agreements violate

public policy and are therefore void. *See, e.g.*, Carolina Freight Carriers Corp. v. Pitt County Transp. Co., 358 F.Supp. 1177 (E.D.Va.1973); Alford v. Major, 314 F.Supp. 979 (N.D.Ind.1970), aff'd 470 F.2d 132 (7th Cir. 1972). The district court judgment in Carolina Freight Carriers Corp. v. Pitt County Transp. Co., *supra*, was reversed on appeal, 492 F.2d 243 (4th Cir. 1974). We agree with the holding of the court of appeals that there is nothing in the ICC regulations which renders an indemnification agreement between truckers illegal. See also Allstate Insurance Co. v. Alterman Transp. Lines, Inc., 465 F.2d 710 (5th Cir. 1972). The holdings in Alford v. Major, *supra*, and Carriers Insurance Exchange v. Truck Insurance Exchange, 310 F.2d 653 (4th Cir. 1962), also cited by Indiana, were based on facts quite different from those found in the present case. In the cited cases there were findings that the indemnification agreement was intended to circumvent ICC requirements in one case, and, in the other, was part of a lease whose purpose was to give the appearance of compliance with regulations which were in fact being violated. We also note that in none of the cases relied upon by Indiana had a single insurer covered both contracting truckers with knowledge of their operating arrangement and hold-harmless agreement.

■ Indiana also relies on cases which, while not condemning indemnification agreements between truckers as being against public policy, hold that the insurer who files a certificate with the Interstate Commerce Commission becomes the primary insurer as a matter of law and that responsibility as primary insurer cannot be avoided by indemnity provisions of a lease or other operating agreement. Hagans v. Glens Falls Insurance Co., 465 F.2d 1249 (10th Cir. 1972); Argonaut Insurance Co. v. National Indemnity Co., 435 F.2d 718 (10th Cir. 1971). In these two cases, unlike the present one, the truckers who entered into indemnity agreements were covered by different insurance companies. The interest of the public in a third party claimant being able to fix responsibility

on one carrier and avoiding involvement in a dispute between insurers of two carriers clearly justifies the holding that in such a situation the ICC-certified insurer is the primary insurer as a matter of law. If Indiana had never named L & B as an insured on the policy of cargo insurance, or had removed L & B as an insured upon notification that its ICC certificate had been cancelled and thereafter had neither billed nor accepted premiums based on Parr's hauling of L & B shipments, it could properly rely on these two cases. In Carolina Casualty Insurance Co. v. Transport Indemnity Co., 488 F.2d 790 (1973), the Tenth Circuit affirmed summary judgment in favor of the insurer of the lessee on the basis of a hold-harmless agreement and provisions of the two insurance policies. It distinguished *Hagans, supra*, and *Argonaut, supra*, on the ground that in the case before it both insurance policies contained ICC endorsements whereas in the two earlier cases only one of the insurers was so certified. The court held that since the insurer of the lessee could eventually recover under a right of indemnification as subrogee of the lessee, the court would avoid circuity of actions by permitting direct recovery against the lessor's insurer.

In Aetna Insurance Co. v. Newton, 315 F.Supp. 860 (D.Del.1970), aff'd, 456 F.2d 655 (3d Cir., 1972), two carriers which operated under ICC permits had an interchange agreement by which the originating carrier continued to haul shipments to their destinations even though these destinations were not in the area served by the originating carrier, but were instead in the area served by the receiving carrier. At the time Continental Insurance Company issued a policy to the carrier Schwartz, there was an agreement that in the event of loss the carrier in whose authorized area the loss occurred would be liable. Thereafter, the two carriers agreed that the originating carrier would be responsible for losses until delivery regardless of the locale of the loss. This was accomplished by means of an agreement by which the initial carrier agreed to hold the receiv-

ing carrier harmless for losses to such shipments. Goods which originated with Schwartz were damaged while in the territory of the carrier Newton and while in equipment owned by Schwartz and driven by its employee. Newton paid the shipper's claim and recovered judgment against its insurer, which then recovered a like judgment against the originating carrier, Schwartz, under the indemnification agreement and as subrogee of Newton. Schwartz then sought to recover from its insurer, Continental. The Court held that Schwartz could not recover from Continental for two reasons. The first reason was that when Continental wrote its policy insuring Schwartz the oral agreement in force provided that Schwartz was not liable for losses occurring in Newton's territory. Though an endorsement was discussed which would have changed this arrangement and would have required the originating carrier to indemnify the receiving carrier for losses in its territory, such endorsement was never added to the policy. The second basis for denial of recovery was that Schwartz never reported revenues received from hauling in Newton territory to Continental as a basis for premium charges. Neither of the two conditions relied upon by the court in Aetna Insurance Co. v. Newton, *supra*, to deny recovery by the insured against its insurer existed in the present case. On the contrary, there was no change in the agreement between the carriers which was known by Indiana when the policy was issued, and Parr reported revenues from L & B hauls which were used by Indiana as a basis for computing premium charges to Parr.

■ In the present case Parr did not act as a mere volunteer in paying the claims of the shipper Brandeis. The hold-harmless agreement required it rather than L & B to be liable for these losses. The findings of facts by the district court that Indiana, through its authorized agent, knew of the agreement and practice by which Parr hauled certain interstate shipments under the ICC authority and bills of lading of L & B and of the existence of the hold-harmless

agreement by which Parr agreed to pay losses occurring to such shipments, are supported by substantial evidence and are not clearly erroneous. Indiana issued a policy to both truckers with this knowledge and, after it was aware that Continental was also insuring L & B and had filed its certificate with the Interstate Commerce Commission, Indiana failed to cancel the coverage of L & B in its policy. The continuance of L & B as an insured in its policy and the acceptance of premium payments based on revenues which included the hauling by Parr of interstate shipments under L & B authority and pursuant to its bills of lading estopped Indiana from denying coverage to Parr for such shipments. South v. Philadelphia Fire & Marine Insurance Co., 217 Ky. 612, 290 S.W. 493, 494 (1927); Home Insurance Co. of New York v. Caudill, Ky., 366 S.W.2d 167, 170 (1963), cited with approval in Spurlin v. Ranier, Ky., 457 S.W.2d 491, 492 (1970); Hanover Insurance Co. v. McLoney, 205 F.Supp. 49, 54 (E.D.Ky.1962).

The judgment of the district court is affirmed.