BUCKEYE UNION INSURANCE COMPANY, APPELLEE, *v.* ALLSTATE INSURANCE COMPANY, APPELLANT.[1]

[Cite as Buckeye Union Ins. Co. v. Allstate Ins. Co. (1979), 63 Ohio App. 2d 112.]

---

[1] Reporter's Note: A motion to certify the record was overruled by the Supreme Court of Ohio, September 13, 1979.

(No. 38167—Decided March 29, 1979.)

*Messrs. Endress & Endress* and *Mr. Richard B. Endress,* for appellee.
*Messrs. Gallagher, Sharp, Fulton, Norman & Mollison* and *Mr. John B. Robertson,* for appellant.

JACKSON, J.   This is an appeal from a judgment entry of the Cuyahoga County Court of Common Pleas ordering defendant-appellant Allstate Insurance Co. (hereinafter Allstate) to pay the sum of $92,500 to plaintiff-appellee Buckeye Union Insurance Co. (hereinafter Buckeye) as indemnity.

On January 30, 1971, William Beutel was operating a 1970 Chevrolet which he had leased from Bob Beck's U-Auto Lease, Inc. (hereinafter Beck's) when he negligently struck another vehicle occupied by Ruth Dansby. Ruth Dansby, together with her husband, Elwood Dansby, filed suit against William Beutel and Beck's. Beutel was insured by Buckeye and Beck's was insured by Allstate. Each policy had limits of coverage for personal injury of $100,000 per person. Buckeye, as insurer for Beutel, settled the claim of Ruth and Elwood Dansby against Beutel for $92,500. Subsequent to this settlement, Buckeye sought indemnity from Allstate, alleging that Allstate was primarily liable while the coverage of Buckeye was "excess."

The case was tried before the court and a judgment was rendered in favor of Buckeye.

Allstate filed a timely notice of appeal and presents a single assignment of error for review:

"The trial court's judgment was against the manifest weight of the evidence and contrary to law."

The issue to be resolved by this court in the case at bar is which of the two insurers, Buckeye or Allstate, shall be held liable for the loss resulting from Beutel's negligence. The case turns on the pertinent provisions of the auto lease agreement and provisions of the respective insurance policies.

Beck's and Beutel entered into a two-year lease agreement which provided, in part:

"Lessee [Beutel] shall provide and pay for standard public liability insurance on said motor vehicle, insuring both the Lessor [Bob Beck's] and the Lessee against legal liability not less than [$100,000] for personal injury.***"

A supplemental lease agreement between Beck's and Beutel also provided:

"Renter [Beutel] understands that Rentor [Bob Beck's] does not provide any bodily injury or property damage liability insurance coverage. Renter represents that there is currently in full force and effect, and agrees that at all times while the vehicle is rented, Renter will maintain in full force and effect bodily injury and property damage liability insurance, insuring Renter while operating the vehicle with Buckeye Union."

At the time Beutel entered into the lease and supplemental lease agreements with Beck's, he had currently in force an auto insurance policy with Buckeye. Under the terms of Beutel's Buckeye policy, the coverage is primary (and sole) unless the insured (Beutel) has other "valid and collectible insurance," in which case the coverage would be pro rata. In addition, where the subject vehicle was a "temporary substitute automobile" or "non-owned automobile" as defined in the policy, Buckeye's coverage would only be "excess" over any other existing primary coverage.

Allstate argues that its policy of insurance issued to Beck's did not provide any coverage whatsoever to Beutel, and that Buckeye is therefore the sole, primary insurer for the loss caused by Beutel's negligence.

Beck's policy with Allstate states as to bodily injury coverage:

"To pay on behalf of the *insured* all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the *automobile.*" (Emphasis added.)

Although the Allstate policy defined "insured" and "automobile" in Parts V and VI, endorsements subsequently added to the policy changed these definitions. Endorsement 3 reads, in pertinent part:

"It is agreed that such insurance as is afforded by the policy applies subject to the following:

"1. Insuring Agreement V of the policy is *deleted* and *replaced* by the following:

*"Definition of Insured - The unqualified word 'insured' includes the named insured, the lessee, and anyone operating the automobile with the permission of the named insured or lessee.*

"2. Insuring Agreement VI of the policy is *deleted* and *replaced* by the following:

*"Automobile Defined - The word 'automobile' means a motor vehicle owned by the named insured and in possession of another under a written lease agreement which provides:*

*"(1) For the exclusive use of such automobile by the lessee for a period of not less than twelve (12) consecutive calendar months, and*

*"(2) that the lessee shall effect, pay for and maintain liability insurance on such automobile.* \* \* \*

"4. The following *exclusion* [*sic*] are added to the policy:

"(R) Under Coverages A and B, except for the named insured, if the named insured did not have written evidence from an insurance company, prior to relinquishing possession of the automobile to a lessee, that such insurance as is required by the lease agreement had been provided.

"(S)*Under coverages A & B, except for the Named Insured, any time there is in effect a lease agreement requiring such insurance to be provided by the lessee or other parties.* Any coverage for the Named Insured shall be excess over any other collectable [*sic*] insurance and then only to the extent that the limits of such other insurance are less than those stipulated in the declarations of this policy. The limits of this insurance including any other collectable [*sic*] insurance is limited to the amounts specified in the declarations of this policy." (Emphasis added.)

Endorsement 5 reads, in pertinent part:

"It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability, Property Damage Liability, Automobile Medical Payments, Collision or Upset and Comprehensive applies subject to the following provisions:

"1. The term 'lessee' and 'rentee' with respect to the time of an accident shall mean:

"a.'Lessee' - a holder of a currently effective bailment lease with the named insured which provides for the holder's use of an automobile for a continuous period of time not less than twelve months.

"b.'Rentee' - a holder of a currently effective bailment lease with the named insured which provides for the holder's use of an automobile for a period of time less than twelve months.

"2. The paragraphs under Insuring Agreement V, 'Definition of Insured,' of the policy are replaced by the following:

"a.*With respect to the insurance for Bodily Injury Liability and Property Damage Liability the unqualified word 'insured' includes the named insured* and, if the named insured is an individual, his spouse if a resident of the same household, *and the lessee or rentee,* and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or the lessee or rentee or with the permission of the named insured or such spouse or the lessee or rentee.***

"3. The paragraphs under Insuring Agreement VI, 'Automobile Defined, Trailers, Private Passenger Automobile, Two or More Automobiles, Including Automatic Insurance,' of the policy are replaced by the following:

"a. *Automobile.* Except with respect to division 2 of coverage C and except where stated to the contrary, *the word 'automobile'* means:

"(1) *Described Automobile - the motor vehicle or trailer described in this policy: but, with respect to a lessee or rentee, shall mean the automobile described in this policy and which is leased to him.****

"5. The following additional paragraph is added to Condition 17, Other Insurance:

"*It is agreed that such insurance as is afforded by the policy does not apply with respect to an automobile leased by the named insured to a lessee pursuant to a lease agreement whereunder such lessee is required to procure automobile insurance applicable to the maintenance and use of such automobile, any automatic coverage provisions of the policy and this endorsement notwithstanding.*" (Emphasis added.)

Thus, both Endorsements 3 and 5 contain definitions of the words "insured" and "automobile" which are intended to replace definitions of those words appearing in the original "Insuring Agreements." In both endorsements, "insured" includes the "named insured" (Beck's) and the "lessee." Endorsement 5 also adds "rentee" as an "insured." In addition, Endorsement 5 broadly defines "automobile" with respect to a lessee as that automobile named in the policy which is leased to the lessee. Endorsement 3, however, defines "automobile" as one owned by the named insured and leased to another for a period not less than twelve months where the lessee is paying for and maintaining liability insurance.

Although the above recited definitions contained in Allstate Endorsements 3 and 5 differ somewhat in terms of their specificity, the intent of the Allstate policy is clear when construed as a whole. *See Zingale* v. *American Surety Co. of New York* (1957), 105 Ohio App. 16. The law in Ohio is that: "A policy of insurance is a contract and like any other contract is to be given a reasonable construction in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed." *Dealers Dairy Products Co.* v. *Royal Ins. Co., Ltd.* (1960), 170 Ohio St. 336, 339.

And in *Bobier* v. *National Cas. Co.* (1944), 143 Ohio St. 215, 219, the Ohio Supreme Court stated: "A contract of indemnity insurance should be construed in the light of the subject matter with which the parties are dealing and the purpose to be accomplished." *See also Portaro* v. *American Guarantee and Liability Ins. Co.* (C.A. 6, 1962), 310 F. 2d 897.

Allstate contends, and we are persuaded that the intent of Beck's Allstate policy, as evidenced by Endorsements 3 and 5, is to exclude lessees,[2] and therefore Beutel, from coverage

---

[2] Endorsement 5 distinguishes between a "rentee" and a "lessee," with only the latter being specifically excluded from coverage under the Allstate policy pursuant to paragraph 5 of Endorsement 5 and paragraph 4(S) of Endorsement 3. A "lessee" is defined as one who leases for a period of time not less than 12 months, while a "rentee" leases for less than 12 months. It is interesting to note that the definition of "automobile" in Endorsement 3, which does not mention "rentee" at all, would result in the exclusion of rentees—as that term is defined in Endorsement 5—from coverage. The underlying lease agreement in the case at bar was for a period of two years. The supplemental lease agreement, which was of indefinite duration, covered a substitute car until the new vehicle, which was the subject of the original two-year lease agree-

where the leasing agreement requires the lessee to maintain his own liability insurance coverage. The lease agreements in the case at bar required the lessee (Beutel) to maintain liability insurance with a limit of at least $100,000 bodily injury. Beutel's coverage under his Buckeye policy includes a bodily injury liability limit of $100,000. Also, Buckeye is named in the lease agreement as the insurer of Beutel. It is clear by the lease agreements signed by Beutel that Beck's required Beutel to maintain his own liability insurance and that Beck's would "not provide any bodily injury or property damage liability insurance coverage." This is not contested by either Allstate or Buckeye.

The intention of Allstate and Beck's is further evidenced by paragraph 4(S) of Allstate Endorsement 3 and paragraph 5 of Allstate Endorsement 5. Paragraph 4(S) specifically excludes lessees from coverage where their lease agreements require them to maintain their own liability insurance. Paragraph 5 also excludes coverage of an automobile "leased by the named insured to a lessee pursuant to a lease agreement" which requires the lessee "to procure automobile insurance***, any automatic coverage provisions of the policy and this endorsement notwithstanding." Consequently, by reason of these clear and unambiguous exclusion provisions, Allstate is not liable for the damages occasioned by the negligence of lessee Beutel.

The error assigned by Allstate, is therefore, well taken.

Accordingly, the judgment of the trial court is reversed and judgment entered for the appellant.

*Judgment reversed.*

PARRINO, P. J., concurs.

PATTON, J., dissents.

PATTON, J., dissenting. I respectfully dissent from the judgment and the opinion of the majority. It is my position that the judgment of the trial court should be reversed and modified. The majority finds that there was no coverage under the Allstate policy. I disagree.

---

ment, was delivered from the manufacturer. Since the underlying lease agreement was for a period of two years, Beutel is a "lessee" as that term is defined in Allstate Endorsement 5.

The original Allstate policy, which Beck procured, provided definitions for both the terms "insured" and "automobile." Endorsement 3 specifically replaced those definitions with definitions of its own. When Endorsement 5 was incorporated into the policy, it provided still another set of definitions for the two terms, and these definitions were inconsistent with the definitions provided for in Endorsement 3.

The majority reads these conflicting endorsements together and thereby arrives at "the intent of the Allstate policy." I contend that the majority is in error in this respect. When an endorsement is properly incorporated into a policy, it becomes part of the policy. If an inconsistency appears between the terms of the original policy and the endorsement, the endorsement is considered a modification of the policy and its terms control. *See Workman* v. *The Republic Mutual Ins. Co.* (1944), 144 Ohio St. 37. Likewise, if there is a conflict between the terms of two endorsements, the last in point of time is controlling. 13A J. Appleman, Insurance Law And Practice 165, Section 7538 (1976). Consequently, the definitions provided for in Endorsement 5 were controlling, and the definitions provided for in Endorsement 3 should have been disregarded.

The Endorsement 5 definition of "insured" includes "the lessee or rentee"; therefore, Beutel was an "insured" under the policy. The Endorsement 5 definition of "automobile" includes the "automobile described in this policy which is leased to***" a lessee or rentee; therefore, the automobile involved in the collision with the Dansbys was an "automobile" under the policy. Consequently, it is my contention that there was coverage under the Allstate policy.

However, the majority also makes reference to the exclusion provisions in paragraph 4(S) of Endorsement 3 and paragraph 5 of Endorsement 5. Clearly, these provisions exclude coverage where the lease agreement requires a "lessee" to procure insurance of his own. Both of these provisions refer to a "lease," and the majority concludes that they were applicable because Beutel was a "lessee."

I must differ with the majority on this point also. The majority states in footnote two that Beutel was a "lessee" pursuant to Endorsement 5 because the underlying lease agreement was for a period of two years. This position ignores one significant fact. Beutel originally agreed to lease a 1971

120

automobile for two years. However, when that vehicle was not ready on time, Beutel agreed to take another automobile for a period of less than a year until the new vehicle was available. Since this latter vehicle was the one involved in the collision with the Dansbys, the latter agreement is the one which must be considered in applying the exclusion provisions. Since this agreement provided the car to Beutel for a period of less than a year, he was a "rentee" pursuant to Endorsement 5. Therefore, the exclusion provisions were not applicable.

The end result of my analysis is that there was coverage under both the Buckeye and Allstate policies. Therefore, under the "other insurance" clauses of both policies, each insurer was required to pay a pro rata share of the damages. I would modify the trial court's judgment and reduce the award to Buckeye to $46,250.