783 F.2d 270
 Elba Alvarado AVILES a/k/a Elba Bonila, et al., Plaintiffs, Appellees,
v.
Jorge Diaz BURGOS, et al., Defendants, Appellees.
The Travelers Indemnity Company, Third-Party Defendant, Appellant.
Elba Alvarado AVILES a/k/a Elba Bonila, et al., Plaintiffs, Appellees,
v.
Jorge Diaz BURGOS, et al., Defendants, Appellees.
Ariel Ruiz Charon, et al., Defendants, Appellants.
 Nos. 84-1929, 85-1097.
 United States Court of Appeals,
First Circuit.
 Argued Nov. 13, 1985.
Decided Jan. 31, 1986.
 
 Antonio Montalvo Nazario, Lares, P.R. for Ariel Ruiz Charon and Corporacion Insular de Seguros.
 Nelson Rivera Cabrera with whom Rua & Mercado, San Juan, P.R. were on brief for Travelers Indem. Co.
 Before COFFIN and BOWNES, Circuit Judges, and WYZANSKI,* Senior District Judge.
 BOWNES, Circuit Judge.
 
 
 1
 These cases involve a dispute between two insurance companies over who shall pay a tort judgment arising out of a collision between an automobile and a flatbed trailer. The insurance companies, The Travelers Indemnity Company (Travelers) and Corporacion Insular de Seguros (CIS),[1] each appeal from the district court's allocation of liability.
 
 
 2
 The trailer was owned by Navieras de Puerto Rico (Navieras), a public corporation owned by the Commonwealth of Puerto Rico engaged in maritime and overland shipment of containerized cargo. When the cargo arrives in Puerto Rico, Navieras places it on a flatbed trailer, which it then leases to an independent trucker for delivery of the cargo. In this case, Navieras leased the trailer to Ariel Ruiz Charon under a lease agreement known as the Trailer Interchange Agreement (the TIA). The TIA contained two clauses relevant to the dispute now before us. The first clause required that the lessee, Ruiz Charon, hold the lessor, Navieras,
 
 
 3
 harmless of responsibility for any loss, damage or injury to any person or property as the result of the use, performance, maintenance or possession of said "trailer" and its equipment, due to any cause or reason which may occur or arise during the time in which said trailer and equipment are in the possession and under the responsibility of the Leaseholder under the terms of this contract.
 
 
 4
 The second clause required the lessee, Ruiz Charon, to
 
 
 5
 maintain the following insurance policies covering their own or rented equipment (including the trailer, whether it is the property of third parties, but is under the Custody, Care and Control of the Autoridad de las Navieras de Puerto Rico), for bodily injuries and damages to the property of third parties ....
 
 
 6
 Complying with the TIA, Ruiz Charon procured insurance from CIS which expressly included Navieras as an additional named insured.
 
 
 7
 On December 28, 1980, an employee of Ruiz Charon, Samuel Santiago, parked the trailer at the side of a road, unhitched the tractor cab, and drove away. Eight hours later, in the wee hours of the morning, a car driven by Jorge Diaz Burgos and carrying Elba Alvarado Aviles, collided with the trailer, causing severe injuries to both individuals. Both Diaz Burgos and Alvarado Aviles had consumed alcoholic beverages prior to the accident.
 
 
 8
 Alvarado Aviles and her minor son, Juan Enrique Bonila, Jr., instituted suit against Diaz Burgos, Ruiz Charon, Navieras and CIS. Diaz Burgos cross-claimed against Ruiz Charon and Navieras. Ruiz Charon, Navieras and CIS then filed a third-party complaint against Travelers because Travelers had issued a comprehensive automobile liability policy to Navieras. These codefendants argued that Travelers, not CIS, should provide primary coverage of the accident because the driver of the tractor trailer, Santiago, was an additional insured under the "omnibus clause" of Navieras' policy with Travelers and because Puerto Rico law places primary responsibility for negligent injury to third parties caused by a motor vehicle on the owner of the vehicle, which in this case was Navieras, the named insured in the Travelers policy. CIS argued that it only provided excess coverage, i.e., it would only be liable for damages exceeding the limits of the Travelers policy. Travelers, on the other hand, denied that Santiago was an additional insured under the omnibus clause because he had acted outside of the scope of the TIA when he abandoned the unhitched trailer alongside the road. Travelers further claimed that CIS was primarily responsible for any damages because it was also an insurer of Navieras and because, under the TIA, Ruiz Charon had agreed to indemnify Navieras for any liability it might suffer. As to this latter ground, CIS argued that the lease agreement could not affect the policy coverage, especially since it had excluded from its policy coverage any liability assumed by the insured under a contract or agreement. CIS and Travelers moved for partial summary judgment on these coverage issues prior to the trial.
 
 
 9
 The district court's summary judgment order was directed at determining which insurance company would cover the damages if it were found after trial that either Ruiz Charon or Navieras had negligently caused the accident. If, on the other hand, the driving of Burgos were to be found the sole cause of plaintiffs' injuries, then, of course, no claim of coverage by either CIS or Travelers could be made. The district court found that if Ruiz Charon's parking of the trailer was the proximate cause of the accident, the Puerto Rico permissive use statute, 9 L.P.R.A. Sec. 1751 (1976), would impose direct financial responsibility for the negligence upon Navieras. Under this statute, the owner of a motor vehicle, used with permission by another, is directly responsible, along with such user, for damages to third persons caused by such permissive use. In order to find Sec. 1751 applicable, the district court held that the trailer would be considered a motor vehicle for purposes of this section. The court then went on to find that Navieras was the owner of this vehicle and, as such, would be responsible for the negligence of the user, Ruiz Charon, if such negligence were to be found. If Navieras were required to pay plaintiffs for the negligence of Ruiz Charon, Sec. 1751 provides for an indemnity action against the negligent user which would be available to Navieras.
 
 
 10
 Because the district court found Sec. 1751 applicable, the result was that if either Navieras or Ruiz Charon were found by the jury to have been negligent, Navieras would be directly responsible to the plaintiffs. The district court then considered the obligation of the insurance companies to cover Navieras' liability. The court found that since both the CIS and Travelers policy named Navieras as an insured and provided primary coverage of liability, the two companies would provide coprimary coverage of Navieras' liability. The coverage would be apportioned between the two companies pro rata, i.e., in proportion to the limits of their policies.
 
 
 11
 Since Navieras was held to be directly responsible to the plaintiff for Ruiz Charon's negligence, the next step would be to determine which insurance company would be responsible to Navieras, if Navieras was successful in its indemnity action against Ruiz Charon under Sec. 1751. The court found, however, that Travelers' coverage of Ruiz Charon under the omnibus clause was dependent upon the resolution of a factual dispute and, therefore, left for later its determination of whether, as to Ruiz Charon's indemnity liability under Sec. 1751, both companies would be primary insurers or one would be primary and the other excess.
 
 
 12
 The issue of negligence was then tried to a jury, which returned the following verdict:
 
 Degree of
 Party Negligence Total Damages
 
 13
 -------------------- ---------- -------------
 
 
 14
 Anel Ruiz Charon 15% ----
 
 
 15
 Navieras 20% ----
 
 
 16
 Jorge Diaz Burgos 60% $295,000.00
 
 
 17
 Elba Alvarado Aviles 5% $200,000.00
 
 
 18
 Juan Bonila, Jr. -- $100,000.00
 
 
 19
 The jury also found that Ruiz Charon's employee, Santiago, did not act outside the scope of the TIA in parking and unhitching the trailer at the side of the road.
 
 
 20
 After the jury verdict, the district court issued conclusions of law. It held that: (1) Ruiz Charon, Navieras and Diaz Burgos would be jointly and severally liable to the plaintiff with a right of contribution between themselves; (2) the damages of the plaintiffs and plaintiff-codefendant Diaz Burgos would be reduced by the degree of their contributory negligence; (3) the hold harmless clause of the TIA required Ruiz Charon to indemnify Navieras for whatever amount Navieras paid to the plaintiffs or plaintiff-codefendant Burgos minus 20% corresponding to the jury's finding of negligence on the part of Navieras; (4) Ruiz Charon was covered under the Travelers omnibus clause; (5) Travelers and CIS were responsible on a pro rata basis, i.e., proportional to the limits of their policies, for the liabilities of both Navieras and Ruiz Charon. The court then went on to calculate in dollars the amount of damages owed to the three recovering parties and the share to be borne by the defendants and the insurance companies.
 
 
 21
 Following the judgment, Ruiz Charon and CIS filed a Rule 59(e) motion to amend the judgment, Navieras filed a motion for judgment n.o.v. or a new trial, and Travelers filed a motion for relief from judgment. In response to these motions, the district court found the award to Juan Bonila excessive and ordered a new trial on the issue of damages unless Bonila agreed to a remittitur reducing the verdict to $30,000. The district court then went on to correct certain of the miscalculations found in the earlier judgment by issuing an amended judgment.
 
 
 22
 We set out the amended judgment in some detail here, both because there are some simple errors which we must correct before we can proceed and because it will be easier to understand the insurance coverage issues with figures for reference. The following table summarizes most of the district court's calculations:
 
 Injured Parties
 
 
 Aviles Burgos Bonila
 -------- -------------- -------
 Total Verdict $200,000 $295,000 $30,000
 Contrib. Negl. 5% 60% --
 Reduced Verdict $190,000 $118,000 $30,000
 Share of
 
 
 Negligent Parties
 
 
 Charon (15%) $ 28,500 not calculated $4,500
 Navieras (20%) $ 38,000 not calculated $6,000
 Burgos (60%) $114,000 not calculated $18,000
 We begin with the first column of numbers representing Alvarado Aviles' damages. The district court found that Ruiz Charon, Navieras and Diaz Burgos were jointly and severally liable for the reduced verdict of $190,000. However, the total of the amounts representing each party's share of this verdict equals $180,500 rather than $190,000. The district court's error appears to have been that it used the reduced verdict as the base for its calculations of each party's share rather than the total verdict, i.e., 15% of $190,000 = $28,500; 20% of $190,000 = $38,000' 60% of $190,000 = $114,000. The result of this error was to award Alvarado Aviles only 95% of the reduced verdict (15% + 20% + 60%) instead of 95% of the total verdict.
 We now turn to the second column, which shows that the district court did not bother to compute each party's share of Diaz Burgos' damages. The reason for this appears to be that Diaz Burgos had no insurance and, if the total amount he owed is added up, $114,000 + $18,000 = $132,000, it exceeds his total recovery of $118,000. It was assumed that he would not be paying his share of the verdict and, therefore, his recovery was set off against what he would owe as contribution, leaving a negative recovery.
 Turning to the column representing Bonila's recovery, we note first that the figure given as the total verdict is the verdict after remittitur. The district court stated that Ruiz Charon, Navieras and Diaz Burgos were jointly and severally liable for the entire $30,000; however, the total of the amounts representing each party's share of this verdict, comes to $28,500 rather than $30,000. Thus, even while the district court did not reduce Bonila's award by his mother's 5% contributory negligence, as Travelers and CIS now argue should have been done, the district court appears to have recognized the propriety of this implicitly, for it only charged each party that proportion of the damages for which it was liable. However, when subsequent to this amended judgment Ruiz Charon/CIS twice moved to have the court reduce Bonila's damages by the percentage attributable to his mother's own negligence, the court twice denied the motion without comment. This left the defendants jointly and severally liable for the entire $30,000, while their right to contribution from each other was based upon a $28,500 recovery. Both CIS and Travelers have agreed that Bonila's recovery should be reduced by 5%. Bonila's counsel has also agreed to this and, in fact, the amount actually paid to Bonila by CIS and Travelers was based upon the 5% reduction.
 We agree with the parties that the district court erred in failing to reduce Bonila's verdict by 5% to $28,500. If, as the district court recognized in the first judgment, it was appropriate to reduce Bonila's $100,000 award to $95,000 because of his mother's negligence, it was also appropriate to reduce the $30,000 remittitur award by the same percentage.
 If we incorporate these corrections into our schematized summary, the table looks like this:
 Injured Parties
 
 
 Aviles Burgos Bonila
 
 23
 -------- -------------- -------
 
 
 24
 Total Verdict $200,000 $295,000 $30,000
 
 
 25
 Contrib. Negl. 5% 60% 5%
 
 
 26
 Reduced Verdict $190,000 $118,000 $28,500
 
 Share of
 
 
 Negligent Parties
 
 
 
 27
 Charon (15%) $ 30,000 not calculated $4,500
 
 
 28
 Navieras (20%) $ 40,000 not calculated $6,000
 
 
 29
 Burgos (60%) $120,000 not calculated $18,000
 
 
 30
 -------- -------
 
 
 31
 $190,000 $28,500
 
 
 32
 We can now calculate the total amount of money which Ruiz Charon, Navieras and their insurers should pay. Ruiz Charon's individual share is $34,500; Navieras' individual share is $46,000. As a practical matter, however, it is also clear that someone will have to pay Diaz Burgos' liability to Alvarado Aviles and Bonila in the amount of $138,000. The total damages, therefore, to be apportioned, in some ratio, between the two insurance companies, CIS and Travelers, is $218,500. We now turn to the apportionment made by the district court and the challenges made to it on appeal.
 
 PRIMARY OR EXCESS COVERAGE
 
 33
 Travelers contends that the district court erred in holding that its policy provided coprimary coverage of this accident. Travelers had argued that it was the intention of the parties, as evidenced by the lease agreement, that the policy obtained by Ruiz Charon, i.e., the CIS policy, would provide primary coverage of both Ruiz Charon's and Navieras' liability arising out of use of the trailer. The district court found that the lease agreement could not shift primary liability to Ruiz Charon and Ruiz Charon's insurer, CIS, because the Puerto Rico permissive use law required that primary liability rest with the owner of the involved vehicle, which was Navieras. 9 LPRA Sec. 1751 provides:
 
 
 34
 The owner of a motor vehicle shall be liable for damages and losses caused through guilt or negligence by operation of such vehicle by or under the physical and actual control of any person who, for the main purpose of operating it, or of having or allowing it to be operated by a third person, obtains possession thereof by express or tacit authorization of its owner.
 
 
 35
 * * *
 
 
 36
 The person for whose negligence the owner of a vehicle is to answer under the provisions of the preceding paragraph shall be bound to indemnify said owner.
 
 
 37
 The court reasoned that since a trailer attached to a truck is a "motor vehicle" for purposes of Sec. 1751 and the trailer in this case was intended to be used as part of a tractor trailer unit, Sec. 1751 was applicable. Under this statute, Navieras, not Ruiz Charon, was directly responsible to the plaintiffs for damages caused by Ruiz Charon's negligent use of the tractor as well as for any negligence of its own. This statutory liability, the court found, could not be altered by the lease agreement between Navieras and Ruiz Charon, although the lease agreement might provide grounds for indemnification between the parties. It further held, however, that since Navieras was insured by both Travelers and CIS, both insurers would have to answer to the injured plaintiffs. The court then went on to hold that both policies provided primary coverage for the accident. Each insurer had claimed that even if their policy covered the accident, their coverage was excess only.
 
 
 38
 Travelers argues that the district court erred in applying Sec. 1751 to this accident because an unhitched trailer is not a motor vehicle under that section. CIS argues that the analysis of whether it is a motor vehicle should focus on the time at which the negligence which caused the accident occurred. In this case, the negligence occurred in parking the trailer at the side of the road, which could only have been done when it was hitched to the truck. Under CIS' view, the trailer was a motor vehicle for purposes of Sec. 1751.
 
 
 39
 The question of whether an unhitched trailer, parked along the road, should be considered a motor vehicle under Sec. 1751 has not yet been resolved by the Puerto Rico courts. We begin our analysis with the definition of motor vehicle found in Chapter 13 of The Vehicle and Traffic Law of Puerto Rico:
 
 Motor Vehicle
 
 40
 "Motor Vehicle", shall mean every self-propelled vehicle except the following or similar vehicles:
 
 
 41
 (a) Traction machines.
 
 
 42
 (b) Rollers.
 
 
 43
 (c) Tractors used exclusively for agricultural purposes.
 
 
 44
 (d) Power shovels.
 
 
 45
 (e) Road construction equipment.
 
 
 46
 (f) Deep-well drilling machines.
 
 
 47
 (g) Small-wheeled vehicles used in factories, warehouses and railroad stations.
 
 
 48
 (h) Vehicles running on rails, by water or by air.
 
 
 49
 (i) Vehicles operated on private property.
 
 
 50
 9 L.P.R.A. Sec. 361 (1976). The definition of a trailer found in Chapter 13 is as follows: " 'Trailer' shall mean any vehicle not propelled by motive power and designed to be drawn by a motor vehicle." 9 L.P.R.A. Sec. 313 (1976). Section 1751 is found within Chapter 13, so these definitions control the meaning of the word motor vehicle in that section.
 
 
 51
 The Supreme Court of Puerto Rico interpreted these definitions in the context of Sec. 1751 in Gonzalez Tamayo v. Seatrain Lines of Puerto Rico, Inc., 106 DPR 494 (1977),[2] a case involving a tractor trailer unit which overturned on a car after rounding a curve at too high a speed. The question before the court was whether the trailer was to be considered a motor vehicle, making the trailer owner as well as the tractor owner directly liable to the accident victims under Sec. 1751. The Court held that
 
 
 52
 when the trailer is separated from the tractor it is not a motor vehicle; it becomes a single unit with the tractor when it is attached to the latter thus acquiring the propelling power necessary for the purpose of its design--to carry freight from one place to another--and, as a whole, such unit must be considered a motor vehicle.
 
 
 53
 Id. at 499. The Court went on to say that the owner of the trailer should be held liable along with the tractor's owner and driver "if the trailer is attached to said tractor the moment an accident is caused by the traffic unit formed by both." Id. at 503.
 
 
 54
 In Rivera Otera v. Casco Sales Co., 84 JTS 75[3] at 3706, the Puerto Rico Supreme Court considered the application of Sec. 1751 to an air compressor which hit several parked cars after becoming unhitched from a truck which was towing it. The focus of the court's discussion was on whether an air compressor on wheels should be treated in the same way as the trailer in Gonzalez, so that it and the truck together constituted one motor vehicle unit for the purposes of Sec. 1751. The court concluded that "if other units are joined to a motor vehicle to be propelled and they move together throughout our public roads, the ensemble constitutes a sole motor vehicle and the owner of each unit is solidarily [jointly and severally] responsible with the others under [Sec. 1751] ...." Id. at 3708.
 
 
 55
 The question of whether the Supreme Court of Puerto Rico would find that Sec. 1751 is applicable to this case is a difficult one. Although the court found that the air compressor was part of a motor vehicle in Rivera Otera despite the fact that it was unhitched from the truck at the moment of the accident, it is by no means clear how far this ruling would be extended. In Otera Rivera, the compressor was still moving at the time of the accident because it had been connected to the truck moments before the accident occurred. In our case, the trailer was stationary and had been unhitched from the tractor for several hours. It is questionable that the trailer was a motor vehicle at the time of the accident, given the definitions in Chapter 13. It is, however, possible that the court might adopt the analysis put forward by CIS that the critical moment for determining the status of the trailer is the time of the negligent act which in this case was when the trailer was parked at the side of the road and unhitched from the tractor. In Gonzalez Tamayo, the court pointed out that a tractor and its trailer are considered a single unit under laws governing stopping, standing and parking. It could be argued that once a trailer is moved onto the highway by a tractor it becomes a motor vehicle and remains so until it is moved off the highway. When a trailer is parked by a tractor on a public road in such a way as to endanger the public, the court might find that the purpose of Sec. 1751, "to offer a higher security of compensation for the damages suffered by persons who are victims of accidents occurring on our public highways," 106 DPR at 501, required it to adopt the definition of motor vehicle which most expanded the protection provided by Sec. 1751. Failure to apply Sec. 1751 under facts similar to this might result in recovery being available only from the negligent user of the vehicle, who could well be a person with very limited assets and no insurance.
 
 
 56
 In most cases, when we are confronted with a difficult question of state law, we have no choice but to attempt to predict what the state court might do or certify the question to the state supreme court, where that procedure is available. In this case, however, for the reasons that follow, we conclude that the resolution of this point of law will have no effect on the liability of either the parties or the insurers. We, therefore, decline to rule on this issue.
 
 
 57
 We first consider the result of finding that Sec. 1751 is applicable. This, of course, hinges upon a finding that the trailer is part of a motor vehicle unit. Once that finding is made, and we assume it here, financial liability is imposed upon the owner of the motor vehicle. The district court reasoned that if the trailer was a motor vehicle, then Navieras was the owner and Ruiz Charon was the permissive user under Sec. 1751. In both Gonzalez and Otera Rivera, however, the owner of the tractor and the owner of the trailer were considered to be joint owners of a single motor vehicle and "solidarily" (jointly and severally) liable for the damages under Sec. 1751. We believe that if the Supreme Court of Puerto Rico were to find the trailer a part of motor vehicle under Sec. 1751, it would also find that Ruiz Charon, as well as Navieras, was the owner of the motor vehicle for purposes of determining financial responsibility under Sec. 1751. The result, therefore, would be that both Ruiz Charon and Navieras would be directly responsible to the plaintiffs for their injuries as if they were joint tortfeasors and that the comparative negligence findings made by the jury would determine the indemnification obligations of the two defendants vis-a-vis each other.
 
 
 58
 We now consider the result of a determination that Sec. 1751 is not applicable to this case. If Sec. 1751 is not applicable, there is no statutorily imposed financial responsibility on the owners of the vehicle, in this case Navieras and Ruiz Charon, for the negligence of a permissive user. This leaves only ordinary tort law as the basis for findings of liability. The jury was instructed on the law of negligence and expressly asked to determine the degree of negligence of each of the three parties, Ruiz Charon, Navieras and Diaz Burgos. Travelers has not argued before us either orally or by brief, that the jury's finding was not supported by the evidence or was tainted by the court's explanation to the jury of the application of Sec. 1751 to the case. We have, however, examined sua sponte the jury charge and jury verdict on this point and are satisfied that the jury's negligence findings were not improperly influenced by the court's mention of Sec. 1751. The jury found that Navieras and Ruiz Charon were joint tortfeasors and the district court ruled that, under Puerto Rico tort law, they would be jointly and severally liable. If Sec. 1751 does not apply, the jury verdict, together with the court's ruling, is controlling.
 
 
 59
 Since the result is the same in either case, our analysis of insurance coverage starts from the position that Navieras and Ruiz Charon are jointly and severally liable for the plaintiffs' injuries. Travelers next contends that, although its policy and the CIS policy provide coverage for Ruiz Charon's and Navieras' liability, only the CIS policy provides primary coverage for both parties' negligence. We begin by looking at the language of both policies. Each contains the following clause: "The insurance afforded by the policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance." CIS argues that its coverage is excess because the policy provides that "[w]ith respect to a hired automobile, or a nonowned automobile, this insurance shall be excess over any other valid and collectible insurance available to the insured." Since an "owned automobile" is "an automobile owned by the named insured" under the CIS policy and Ruiz Charon did not own the trailer, CIS claims that its policy is excess. CIS overlooks the fact that Navieras is also a named insured under its own policy and, as a result, the trailer is an "owned automobile." In addition, if the tractor trailor combination is considered a single motor vehicle, as owner of the tractor, Ruiz Charon is a joint owner of the motor vehicle which includes the trailer. We find, therefore, that under the language of the CIS policy alone, primary coverage is afforded to both Ruiz Charon and Navieras. Travelers makes no argument suggesting that its policy language provides anything but primary coverage for both Navieras and Ruiz Charon. It does, however, argue that the effect of either the "obtain insurance" clause or the "hold harmless" clause in the trailer lease agreement was to make the Travelers policy excess coverage.
 
 
 60
 Travelers cites to Couch on Insurance 2d (Rev. ed.) Sec. 62:63, at 518, for the proposition that "[w]here the lease specifically requires that the lessee obtain his own insurance, the lessee's policy is primary." Couch cites three cases as support for this proposition: National Indemnity Co. v. Home Insurance Co., 345 So.2d 1077 (Fla.App.1977), cert. denied, 355 So.2d 514 (Fla.1978); Hartford Accident & Indemnity Co. v. Lauderdale Rent-A-Car, 351 So.2d 362 (Fla.App.1977); Buckeye Union Insurance Co. v. Allstate Insurance Co., 63 Ohio App.2d 112, 409 N.E.2d 1051 (1979). A close reading of these cases, however, shows that the proposition stated by Couch is misleadingly broad. Before discussing the cases, it is essential to differentiate between two different uses of the word "primary." When applied to a party in a tort suit, it refers to financial liability for injuries to the injured party. Primary liability in this sense is established by a showing that one party was the active tortfeasor or by a statute or common law rule imposing initial financial responsibility to the plaintiff on one particular party. 9 L.P.R.A. Sec. 1751 is a good example of a statute establishing primary liability of this kind. The owner of a vehicle is made primarily liable, i.e., responsible to the plaintiff, even if another person's negligence caused the damage. When applied to an insurance policy, primary liability must be compared to excess liability. A policy with primary liability obligates the company that issued the policy to pay up to the limits of its policy to cover its insured's liability. A policy with excess liability only pays towards the insured's liability if that liability exceeds the limits of the primary policy. Whether or not an insured is found primarily liable has nothing to do with whether a particular policy provides primary or excess coverage. That depends upon the terms of the policy. We now turn to an examination of the cases cited in Couch.
 
 
 61
 In National Indemnity, 345 So.2d 1077, there was a dispute between the excess insurer of a car leasing company and the excess insurer of the car lessee as to who would be responsible for excess liability arising out of the lessee's negligent operation of the car. The Florida Supreme Court had announced a rule imposing primary liability on automobile lessors to protect the public against the negligence of lessees who did not have their own insurance. The Florida District Court of Appeal held that this derogation of the primary common law liability of the active tortfeasor was not justified by public policy when the lease specifically required that the lessee purchase insurance. The lessee, therefore, as the active tortfeasor, was found to be primarily liable. This means that her excess insurer, rather than the lessor's excess insurer, was liable for the excess damages to the injured victim. This case provides no guidance for the problem we are faced with here. The jury has already found that both Ruiz Charon and Navieras were active tortfeasors and no one has appealed this finding. We have eliminated the district court's imposition of primary liability on Navieras under Sec. 1751. Both Ruiz Charon and Navieras, therefore, are primarily liable to the injured plaintiffs. Our problem is that two different insurance policies cover each party's liability and each policy is disclaiming primary coverage of liability. National Indemnity is inapposite.
 
 
 62
 The second case cited by Couch holds essentially the same as National Indemnity. Hartford Accident & Indemnity v. Lauderdale Rent-A-Car, 351 So.2d 362, imposed primary coverage on the lessee's insurer because the lessee was the active tortfeasor and no other insurer covered the lessee. The third case cited in Couch also provides no help. In Buckeye Union Insurance Co. v. Allstate Insurance Co., 63 Ohio App.2d 112, 409 N.E.2d 1051, a provision in the lease agreement requiring the lessee to provide his own insurance was found to have the effect of excluding coverage of the lessee by the lessor's insurer under the language of the lessor's insurance policy. This, of course, left only the lessee's insurer to cover the liability. There is no support in these cases for Travelers' contention that the lease provision requiring Ruiz Charon to purchase his own insurance should be read to convert Travelers' otherwise primary coverage into excess coverage.
 
 
 63
 We now turn to Travelers' second argument, that the hold harmless clause in the lease agreement should be read so to make Travelers' policy excess. Travelers first relies upon a case which shifted the burden of insurance off the primary insurer on the basis of an indemnity agreement between its insured and a third party which would have allowed the primary insurer to recover all its losses from the third party's insurer. In Carolina Casualty Insurance Co. v. Transport Indemnity Co., 488 F.2d 790 (10th Cir.1973), a declaratory judgment action was brought to determine the rights and duties of two insurers arising out of an accident between a leased tractor trailer and an automobile. The court found that the insurer of the lessee, who covered only the lessee and would have provided primary coverage for the accident had the lessee been sued, would be able to subrogate the right of its insured against the active tortfeasor, who was an employee of the lessor and covered by the lessor's insurance. This meant that the lessor's insurer would have to pay for any damages covered by the lessee's insurer. "To avoid circuity of action," id. at 794, the court found the lessor's policy to be primary.
 
 
 64
 Travelers argues that because of the hold harmless agreement between Navieras and Ruiz Charon, Ruiz Charon, and ultimately CIS, will have to indemnify Travelers for any portion of the judgment it pays. It argues, therefore, that we should "avoid circuity of action" and declare CIS the primary insurer. There are at least two reasons why this argument fails. First, we note that, under its omnibus clause, Travelers is the insurer of Ruiz Charon as well as Navieras. Even if Travelers could succeed in subrogating Navieras' right to indemnification from Ruiz Charon, it could not recover from Ruiz Charon that portion of the judgment paid by Travelers as Ruiz Charon's insurer to cover Ruiz Charon's negligence. Second, under general principles of insurance law, Travelers is not permitted to seek subrogation against Ruiz Charon. "[T]here is no right to subrogation where an insurance company, in derogation of its contract, seeks to be subrogated in the right of its named assured against an additional insured under the omnibus clause, for the additional insured, except as limited in the contract, is entitled to the same protection as the named insured." Carolina Casualty Insurance Co. v. Underwriters Insurance Co., 569 F.2d 304, 314 (5th Cir.1978). See also Transport Indemnity Co. v. Paxton National Insurance Co., 657 F.2d 657, 660 (5th Cir.1981), cert. denied, 455 U.S. 982, 102 S.Ct. 1490, 71 L.Ed.2d 692 (1982); Trinity Universal Insurance Co. v. Farmers Mutual Automobile Insurance Co., 309 F.2d 283, 285 (7th Cir.1962); American Surety Co. v. Canal Insurance Co., 258 F.2d 934, 936 (4th Cir.1958).
 
 
 65
 This principle has been applied regardless of whether the additional insured has independent insurance or not. In Carolina Casualty v. Underwriters, 569 F.2d 304, the insurer of a tractor trailer lessee sought to have the insurer of the tractor trailer lessor declared the primary insurer, arguing that the lessor had provided and insured the driver, who was the active tortfeasor, and that the lessee's insurer would be able to subrogate the lessee's right to indemnification from the driver, ultimately recovering from the lessor's insurer. Unfortunately for the lessee's insurer, the court found that the driver was also insured under the omnibus clause of the lessee's policy and that this precluded any attempt to proceed against the driver. As a result, the court held that the two insurers would be coprimary insurers. The facts of our case are on all fours with Carolina and we see no reason not to apply the same reasoning. It is of no consequence that the source of the indemnification in Carolina was the common law right of one held vicariously liable for the acts of another and the source of indemnity in this case would be the lease agreement. It is the subrogation, not the indemnification, which is prohibited.
 
 
 66
 Travelers also argues that the presence of the hold harmless clause in the lease agreement estops CIS from disclaiming primary coverage, relying upon the case of Indiana Insurance Co. v. Parr Trucking Service, Inc., 510 F.2d 490 (6th Cir.1975). In Parr, an intrastate trucking company and an interstate trucking company were jointly owned. An arrangement had been worked out whereby the intrastate trucker would carry cargo for the interstate trucker using the interstate trucker's authority. In exchange, the intrastate trucker agreed to hold the interstate trucker harmless for any damages or losses it might suffer and obtained insurance from Indiana Insurance Co. which named both truckers as insureds. There was substantial evidence that Indiana knew of the practice of the two truckers as well as the hold harmless agreement and had calculated premium payments based upon revenue from these special shipments. In compliance with Interstate Commerce Commission (ICC) regulations, Indiana filed a certificate of insurance with the ICC for the interstate trucker. Sometime later, the interstate trucker came under separate ownership and purchased insurance for the interstate operation alone from Continental Insurance Co. Continental then filed a certificate of insurance with the ICC. The ICC notified Indiana that Continental had insured the interstate trucker and that its certificate of insurance was cancelled. Indiana did not remove the interstate trucker from its policy and assured both truckers that it would continue to cover the intrastate trucker's shipment of the interstate trucker's cargo. Indiana continued to collect premiums from the intrastate trucker for this coverage. On one of these special trips, the cargo was damaged and the intrastate trucker demanded that Indiana cover this loss. Indiana refused, claiming that Continental was the primary insurer for this loss. The intrastate trucker paid the interstate trucker for the loss and then both sued the two insurance companies to find out who was liable for the loss. The court found that, under the circumstances, Indiana was estopped from denying coverage to the intrastate trucker for these losses.
 
 
 67
 We can find no such estoppel here. We note first of all that there is a serious question about whether CIS would have any obligation to cover Ruiz Charon's contractual liability to indemnify Navieras. The CIS policy expressly excludes "liability assumed by the insured under any contract or agreement." On appeal, Travelers argued that, under Puerto Rico law, CIS must cover this obligation if it knew or should have known that this was one of the risks for which the insured sought to obtain coverage, citing Banco de la Vivienda v. Pagan Insurance Underwriters, 111 DPR 1 (1981). But this issue was never properly raised below. It is true that CIS did mention the policy exclusion in one of its memoranda to the court. However, it was not as part of an argument concerning its obligation to cover Ruiz Charon's liability under the hold harmless clause. No party ever cited the Banco de la Vivienda case to the district court or attempted to bring to the court's attention that a dispute about the insurance coverage of Ruiz Charon's indemnification liability was an issue. As a result, although the court did make a ruling about the indemnification liability, it was simply that Ruiz Charon would be required to indemnify Navieras for 80% of Navieras' losses. The court made no mention of CIS' (or Travelers') possible obligation to cover this liability of Ruiz Charon's. A resolution of this issue would require a factual determination of CIS's knowledge of this provision in the lease agreement, which is beyond our purview. The critical prerequisite for estoppel, i.e., knowledge on the part of the insurer that it was relied upon to cover this risk is missing.
 
 
 68
 If a resolution of this factual issue were all that was needed to determine whether CIS should be estopped from denying primary coverage, we might have remanded the case on this ground, although it would be with some reluctance given the parties' failure to raise the issue properly below. See Wallace Motor Sales, Inc. v. American Motor Sales Corporation, 780 F.2d 1049, at 1067 (1st Cir.1985). Indiana v. Parr, 510 F.2d 490 (6th Cir.1975), however, is simply inapposite, regardless of the resolution of the estoppel issue. In Parr, the indemnitor had paid the indemnitee and was suing his own insurer for coverage of the loss. It is not at all clear that the court would have absolved the interstate trucker's insurer from coverage had its insured not already been compensated for the loss. As far as we can tell, Ruiz Charon has not paid Navieras anything under the indemnification agreement. Nor is it Ruiz Charon who asks that CIS be made to pay for a risk he paid it to assume. Rather it is one insurance company which is seeking to put the entire burden of the accident upon another insurance company. There simply are no equities in favor of this result. Travelers also assumed the risk of insuring Ruiz Charon. The district court so found and Travelers has not appealed this finding. We note that the Travelers policy contains a special endorsement stating that "automobile coverage [is] to be extended to include such automobiles driven by independent contractors as well as the insured," and the definition of automobiles in the policy includes trailers. We can see no reason to relieve Travelers of an obligation it knowingly assumed. We find, therefore, that the district court was correct in holding that both Travelers and CIS provide primary coverage of the accident.
 
 PRO RATA OR EQUAL SHARES
 
 69
 Travelers contends that the district court erred when it determined that the two insurance policies would share the coverage by pro rata contribution rather than contribution by equal shares. Under pro rata contribution, each company contributes to the loss, up to the limits of liability, based on the ratio of its policy limit to the aggregate of available coverage. A. Windt, Insurance Claims and Disputes Sec. 7.04, at 309 (1982). Thus, here, where the CIS policy limit was $300,000 and the Travelers policy limit was $3,000,000, the district court determined that Travelers should pay 91% of Navieras' and/or Ruiz Charon's liability, while CIS should pay 9% of Navieras' and/or Ruiz Charon's liability. Contribution by equal shares means that each insurer contributes equal amounts up to the lowest policy limit. If one policy limit is reached before the other, the second insurer covers the rest up to its policy limit. Most insurance policies specifically provide for one method of contribution or the other and where those provisions are in agreement, they control. McDaniels v. Great Atlantic & Pacific Tea Co., 602 F.2d 78, 83 (5th Cir.1979); A. Windt, Insurance Claims and Disputes Sec. 7.04, at 309 (1982).
 
 
 70
 The two policies contain identical language:
 
 
 71
 When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:
 
 
 72
 (a) Contribution by Equal Shares. If all of such other valid and collectible insurance provides for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.
 
 
 73
 (b) Contribution by Limits. If any of such other insurance does not provide for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.
 
 
 74
 In the body of its partial summary judgment order, the district court interpreted this language to mean that each policy called for contribution by equal shares:
 
 
 75
 Both policies, covering Navieras/PRMSA, contain substantively identical "other insurance" clauses, providing for contribution by equal shares when all other valid and applicable insurance coverage provides for contribution by equal shares. Therefore, as to the responsibility for damages to be paid to the plaintiff because of liability PRMSA/Navieras may incur, both policies are equally liable.
 
 
 76
 However, when the district court summarized the results of the order, it came to exactly the opposite conclusion: "[B]oth policies are primary, and shall provide coverage pro rata in terms of the limits of each policy for any damages that might be incurred by codefendant PRMSA/Navieras." It was the pro rata determination which prevailed in the judgment.
 
 
 77
 The district court gave no reason for its decision to require contribution pro rata rather than by equal shares. There is no question that, despite the conditional nature of the language used, both policies must be construed to provide for contribution by equal shares. McDaniels, 602 F.2d at 83. CIS makes some suggestion that it would be more equitable to have contribution pro rata given the greater coverage of the Travelers policy and the greater premiums paid to Travelers, but we see no room for such equity where the language of the CIS policy clearly states that the contribution should be on the basis of equal shares. CIS took the risk that such an arrangement might not always be to its benefit when it included such language in the policy and it will not now be heard to complain that such an arrangement is unfair. We hold, therefore, that the district court erred in apportioning the contributions of Travelers and CIS pro rata. The method of apportionment should be by equal shares. Since the total damages, when Diaz Burgos' damages are eliminated, are within the CIS limit, this means that each insurer should pay half the total losses.
 
 INDEMNITY
 
 78
 The final claim of error made by Travelers is that the district court erred in finding that under the hold harmless clause in the lease agreement Ruiz Charon would have to indemnify Navieras for 80% of any amount Navieras paid to the injured parties. The district court based this upon a holding of the Supreme Court of Puerto Rico that "clear and explicit language is required in the contract to absolve a person from the consequences of his own conduct." Cabrera v. Doval, 76 PRR 728, 731 (1954). Since Navieras had been found to have been 20% negligent, the district court reasoned that Ruiz Charon should not have to indemnify Navieras for any losses caused by Navieras' own negligence and, therefore, reduced the indemnification to 80%.
 
 
 79
 As a general matter, courts are reluctant to allow an indemnitee to recover for his or her own negligence unless it is clear that this was the intention of the parties. E.g., Beloit Power Systems v. Hess Oil Virgin Island Corp., 757 F.2d 1427, 1431 (3d Cir.1985). The critical issue in such cases is whether the language in question has made this possibility clear to the indemnitor. This is essentially a matter of state law. The Supreme Court of Puerto Rico has held in another trailer-lease situation that language substantially similar to that found here required the indemnitor or its insurer to fully compensate the indemnitee or its insurer for any losses suffered despite the fact that the court found both the indemnitor and the indemnitee negligent. In Becerril Sepulveda v. Valencia Baxt Express, Inc.,[4] while the court did not expressly consider the question of whether the negligence of the indemnitee should be indemnified, it found that a hold harmless clause of this type was valid and governed the relationship between the parties to the agreement. It then went on to hold that the indemnitor and its insurer were required to pay the indemnitee and its insurer "whatever amounts of money they may have paid to plaintiff as a result of the judgment entered by the trial court, plus costs." It thus appears that language of the kind found in the lease agreement in which the indemnitor agrees to compensate the indemnitee for "any loss" "due to any cause or reason," is sufficient under Puerto Rico law to bind the indemnitor to compensate the indemnitee for losses caused by the indemnitee's own negligence. The district court erred in holding that Ruiz Charon was only required to compensate Navieras for 80% of Navieras' losses. Under the language of the hold harmless clause, the indemnification should be for 100% of Navieras' losses.
 
 CONCLUSION
 
 80
 We have found that the district court made certain mathematical errors with regard to the calculation of the shares of the defendants for injuries to Elba Alvarado Aviles. This should be corrected on remand. The total award to Juan Bonila should also be reduced to $28,500, although the share of each defendant remains the same. The two insurance companies, Travelers and CIS, are each liable for half of the total liability and since the money has already been paid to the plaintiffs according to a 91%/9% split, the district court must order CIS to repay Travelers for any amount paid to plaintiffs over its proper one-half share. Finally, we have held that Ruiz Charon is liable to Navieras for 100% of Navieras' losses.
 
 
 81
 Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion.
 
 
 82
 Costs awarded to Travelers.
 
 
 
 *
 Of the District of Massachusetts, sitting by designation
 
 
 [1]
 CIS is joined in its appeal by its insured, Ariel Ruiz Charon
 
 
 [2]
 The official opinions of the Supreme Court of Puerto Rico. A translation copy has been furnished. All cites are to the Spanish language opinion
 
 
 [3]
 A compilation of Puerto Rico Supreme Court slip opinions
 
 
 [4]
 The case is an unpublished judgment or sentencia of the Supreme Court of Puerto Rico, issued on May 12, 1982 (R-82-84 and R-82-112). Rule 44(c) of the Rules of the Supreme Court of Puerto Rico states: "In view of the fact that the judgments not published are not accessible to the general public, it shall be considered improper to cite as an authority or precedent before any court a decision of this Court which has not been rendered through an opinion, or which has not been published by the Bar Association or by the Court itself." A translation of this seven-page opinion was provided to us in the Appendix prepared by Travelers and its inclusion was not objected to by CIS. Because all the parties have had access to the opinion and because it is a well-reasoned and complete opinion, we have relied upon it