[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 21, 2012
JOHN LEY
CLERK

No. 11-12623
_____

D.C. Docket No. 2:10-cv-14197-JEM

AUTO-OWNERS INSURANCE COMPANY,

Plaintiff - Appellant,

versus

GREAT AMERICAN INSURANCE COMPANY,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(June 21, 2012)

Before CARNES, BARKETT, and BLACK, Circuit Judges.

PER CURIAM:

This is a priority-of-coverage dispute between two insurance companies.

Auto-Owners Insurance Company sued Great American Insurance Company in state court after Great American refused to contribute pro rata to the settlement of an underlying lawsuit. Great American removed the case to federal district court based on diversity of citizenship, and the district court later granted Great American's motion for summary judgment. Auto-Owners appeals, contending that the district court erred in denying its motion to remand and in granting Great American summary judgment.

## I.

On February 25, 2008, Dianna Viana was injured when the motorcycle she was riding collided with a vehicle driven by Sidney Banack. Banack's vehicle was owned by Quality Caretaking of Indian River. Viana sued Banack and Quality Caretaking in Florida state court, and the parties mediated and settled the case for $5 million. Three insurers then funded the settlement. U.S. Fire Insurance Company, which insured Quality Caretaking on a primary basis, contributed $1 million to the settlement.[1] National Union Fire Insurance Company, which insured Quality Caretaking under an umbrella policy,

---

[1] "A policy with primary liability obligates the company that issued the policy to pay up to the limits of its policy to cover its insured's liability." Aviles v. Burgos, 783 F.2d 270, 278 (1st Cir. 1986).

2

contributed $2 million.[2] Auto-Owners, which insured Banack under an executive umbrella policy, contributed $2 million.

Great American also insured Quality Caretaking under an excess liability policy, but it refused to contribute to the settlement, contending that its policy did not cover Quality Caretaking's loss. The declarations page of Great American's excess liability policy with Quality Caretaking states:

> **ITEM 4.   LIMITS OF INSURANCE:**
> [Great American's] Liability under this policy will not exceed the following limit:  100 percent of "loss" excess of Underlying Insurance stated in Item 5 of the Declarations, but for no greater than: $10,000,000.

R5-2:1.  Item 5 identifies National Union's umbrella policy covering Quality Caretaking as the "Underlying Insurance" policy and states that the "Applicable Limit" of that policy is $5 million.  Id.

Great American's policy with Quality Caretaking also contains "INSURING AGREEMENTS," which state:

> **I.  COVERAGE**
> [Great American] will pay on behalf of [Quality Caretaking] "loss" in excess of the Underlying Limits of Insurance shown in Item 5[] of the Declarations, but only up to an amount not exceeding [$10 million].
>
> . . . .

---

[2] "A policy with excess [or umbrella] liability only pays towards the insured's liability if that liability exceeds the limits of the primary policy." Aviles, 783 F.2d at 278.

3

**II. LIMITS OF INSURANCE**

. . . .

**B.** The Limits of Insurance of this policy will apply as follow:
1. This policy applies only in excess of the Underlying Limits of Insurance shown in Item 5[] of the Declarations.

. . . .

**V. DEFINITIONS**
"Loss" means those sums which [Quality Caretaking is] legally obligated to pay as damages . . . .

**VI. CONDITIONS**

. . . .

**H. When "Loss" is Payable**
Coverage under this policy will not apply unless and until [Quality Caretaking] or [National Union] has paid or is obligated to pay the full amount of the Underlying Limits of Insurance stated in Item 5[] of the Declarations [($5 million)].

Id. at 3, 6–7. Great American's policy also contains an "other insurance clause," which states: "If other insurance applies to a 'loss' that is also covered by this policy, this policy will apply excess of the other insurance." Id. at 7.

Like the Great American policy, Auto-Owners' policy with Banack contains an other insurance clause, which states: "If other insurance covering a loss also covered by this policy is available to the insured, the insurance afforded by this

4

policy shall be excess of such other insurance." R33-3:9. Those are the facts of the case, and they are undisputed.

## II.

Auto-Owners sued Great American in Florida state court seeking a declaratory judgment that Great American must pay its pro rata share of the Viana settlement—$1,340,000. Auto-Owners also sought equitable subrogation and contribution. Great American removed the case to federal district court, see 28 U.S.C. § 1441(a), based on diversity of citizenship, see 28 U.S.C. § 1332. Auto-Owners then filed a motion to remand, contending that "[r]emoval defeat[ed] the purpose of diversity jurisdiction." It also contended that the district court should abstain from deciding the case because "[t]he state court likely has greater expertise in deciding its own state law." The district court denied that motion as "without merit."

Each party then filed a motion for summary judgment. Auto-Owners argued that Florida law provides that the other insurance clauses in the two agreements cancel out each other, requiring Great American to contribute pro rata to the Viana settlement. Great American argued that its policy does not cover the loss at issue and so it had no obligation to pay any money toward the settlement.

5

The district court granted Great American's motion for summary judgment and denied Auto-Owners' motion. The court concluded that "the plain language of Great American's policy makes it clear that the loss at issue is not covered by Great American's policy" because that policy "is clearly conditioned on the loss exceeding . . . $5,000,000." For that same reason the court concluded that the other insurance clauses in the Great American and Auto-Owners policies were "irrelevant." And "because Great American was never under any obligation to pay the debt at issue," the court concluded that Auto-Owners was not entitled to equitable subrogation or contribution.

### III.

Auto-Owners makes two arguments in support of its contention that the district court erred in denying its motion to remand the case to state court. First, Auto-Owners argues that because neither it nor Great American is a Florida citizen, neither party would have suffered local prejudice in the state court, and preventing local prejudice is the sole purpose of federal diversity jurisdiction. So, Auto-Owners argues, the district court's exercise of diversity jurisdiction was improper. Second, Auto-Owners argues that the district court should have abstained from deciding the case because it involves too much "complexity" and "Florida courts . . . have a vested interest in creating consistent common law on

6

issues related to priority of coverages." We review <u>de novo</u> a district court's denial of a motion to remand to state court, <u>Moore v. N. Am. Sports, Inc.</u>, 623 F.3d 1325, 1328 (11th Cir. 2010), but we review only for abuse of discretion a district court's decision not to abstain from deciding a case, <u>Beaulieu v. City of Alabaster</u>, 454 F.3d 1219, 1231 (11th Cir. 2006).

The federal district courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." <u>Id.</u> § 1441(a). But "[a] civil action otherwise removable solely on the basis of [diversity] jurisdiction . . . may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." <u>Id.</u> § 1441(b)(2).

Great American properly removed this case to federal district court because the district court had original jurisdiction based on diversity of citizenship, <u>see id.</u> § 1332(a)(1), and Great American is not a citizen of Florida, "the State in which

[the] action [was] brought," id. § 1441(b)(2). Great American and Auto-Owners are citizens of different states, which is all that is required for citizenship diversity.[3] Auto-Owners' speculation about the purpose of the diversity statute is pointless. We do not project our view of the purpose of a statute onto the facts of a case but instead apply the statutory language to those facts. See Friends of the Everglades v. S. Fla. Water Mgmt. Dist., 570 F.3d 1210, 1226 (11th Cir. 2009) ("[W]e 'interpret and apply statutes, not congressional purposes.'") (quoting In re Hedrick, 524 F.3d 1175, 1188 (11th Cir. 2008)). And the amount in controversy—the pro rata share of the Viana settlement that Great American is allegedly obligated to pay—exceeds $75,000. See 28 U.S.C. § 1332(a)(1). It follows that the district court properly exercised diversity jurisdiction.

As for Auto-Owners' abstention argument, federal courts often apply Florida law to decide insurance coverage disputes, see, e.g., Nat'l Union Fire Ins.

---

[3] For the purposes of diversity jurisdiction, "a corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Great American is incorporated and has its principal place business in Ohio; Auto-Owners is incorporated and has its principal place of business in Michigan. It is true that "in any direct action against the insurer of a policy . . . of liability insurance . . . to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of . . . every State and foreign state of which the insured is a citizen." Id. That direct action provision does not apply here, however, because Auto-Owners' suit against Great American is not a direct action. See Fortson v. St. Paul Fire & Marine Ins. Co., 751 F.2d 1157, 1159 (11th Cir. 1985) ("We hold that unless the cause of action against the insurance company is of such a nature that the liability sought to be imposed could be imposed against the insured, the action is not a direct action.").

Co., of Pittsburgh, Pa. v. Travelers Ins. Co., 214 F.3d 1269 (11th Cir. 2000); Auto-Owners Ins. Co. v. Travelers Cas. & Sur. Co., 227 F. Supp. 2d 1248 (M.D. Fla. 2002), and we are competent to do so, even in complex cases, which is not to say that the state law issue here is complex. The district court did not abuse its discretion by not abstaining.

IV.

Auto-Owners next contends that the district court erred in granting Great American's motion for summary judgment, arguing that Great American is obligated to contribute pro rata to the Viana settlement. According to Auto-Owners, because its policy and Great American's policy both contain an other insurance clause, those two clauses cancel out each other and require Great American to contribute to the settlement. We review de novo a district court's grant of summary judgment and draw "all inferences and review[] all evidence in the light most favorable to the non-moving party." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). "Summary judgment is appropriate only if 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Id. (quoting Fed. R. Civ. P. 56(a)).

Federal courts apply state law in construing insurance policies, see

Travelers Indem. Co. v. PCR Inc., 326 F.3d 1190, 1193 (11th Cir. 2003), and the parties agree that Florida law governs this dispute. In Florida, "insurance contracts must be construed in accordance with the plain language of the policy." Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So. 2d 161, 165 (Fla. 2003); see Nat'l Union Fire Ins. Co., 214 F.3d at 1272 ("In apportioning contractual responsibilities among multiple insurers, this court has recognized that Florida law is quite clear that the parties' intent is to be measured solely by the language of the policies unless the language is ambiguous." (quotation marks omitted)).

When deciding the priority of coverage among multiple insurers, Florida courts generally rely on "the language of the several policies, with careful attention to the other insurance clauses." Am. States Ins. Co. v. Baroletti, 566 So. 2d 314, 316 (Fla. 2d DCA 1990) (quotation marks omitted). A policy's "other insurance clause describes what occurs if other insurance coverage is available for the particular loss." Tobin v. Mich. Mut. Ins. Co., 948 So. 2d 692, 697 (Fla. 2006) (quotation marks omitted). Sometimes, an other insurance clause "states that its policy will be excess over other collectible insurance." Allstate Ins. Co. v. Exec. Car & Truck Leasing, Inc., 494 So. 2d 487, 489 (Fla. 1986). If two policies that cover the same loss each contain that type of other insurance clause, those clauses "cancel each other out, which results in our apportioning the policies on a pro-rata

10

basis determined by the policy limits in relation to the loss." Id.

This case does not involve a situation where two insurance policies cover the same loss because the plain, unambiguous language of Great American's excess liability policy provides that it does not cover the loss at issue. The policy provides that Great American "will pay on behalf of [Quality Caretaking] 'loss' in excess of [$5 million]" and that the "policy applies only in excess of [$5 million]." R5-2:3. The policy "unambiguously set[s] a fixed point at which [Great American's] liability under the excess policy arises," which is $5 million. Garmany v. Mission Ins. Co., 785 F.2d 941, 946 (11th Cir. 1986). Because the $5 million loss at issue does not exceed $5 million, Great American's policy with Quality Caretaking does not cover that loss, and the company is not obligated to contribute to the Viana settlement.

Although Florida case law provides that some other insurance clauses in policies that cover the same loss cancel out each other, that case law is irrelevant because Great American's policy does not cover the loss at issue. See Tobin, 948 So. 2d at 697 ("An 'other insurance' clause describes what occurs if other insurance is available for the particular loss." (emphasis added)); R5-2:7 ("If other insurance applies to a 'loss' that is also covered by this policy, this policy will apply excess of the other insurance." (emphasis added)) (Great American policy).

11

And Auto-Owners has cited no case holding that a policy's other insurance clause can grant coverage to an insured where the terms of the policy otherwise do not.[4]

**AFFIRMED.**[5]

---

[4] Nor is Auto-Owners entitled to equitable subrogation.  Because Great American is not obligated to contribute pro rata to the settlement, requiring it to do so would work an injustice to that company while giving Auto-Owners a windfall, and "equitable subrogation is not allowed if it works any injustice to the rights of others."  Aurora Loan Servs. LLC v. Senchuk, 36 So. 3d 716, 720 (Fla. 1st DCA 2010) (quotation marks omitted).  Nor is Auto-Owners entitled to contribution from Great American because the two companies did not share an obligation.  See Liberty Mut. Ins. Co. v. Curtis, 327 So. 2d 82, 86 (Fla. 1st DCA 1976) ("[S]imple justice seems to require contribution by an obligor who is discharged of an obligation shared with but paid entirely or disproportionately by another.").  Auto-Owners had an obligation; Great American did not.

[5] This appeal was originally scheduled for oral argument, but under 11th Circuit Rule 34-3(f) it was removed from the oral argument calendar.